PARKER DOUGLAS (8924)
Utah Federal Solicitor
DAVID N. WOLF (6688)
KYLE J. KAISER (13924)
Assistant Utah Attorneys General
OFFICE OF THE UTAH ATTORNEY GENERAL
350 North State Street, Ste. 230
P.O. Box 142320
Salt Lake City, Utah 84114-2320
Telephone: (801) 538-9600
Facsimile: (801) 538-1121
E-mail: pdouglas@utah.gov
E-mail: dnwolf@utah.gov
E-mail: kkaiser@utah.gov

*Counsel for Defendants*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UTAH REPUBLICAN PARTY,<br><br>     Plaintiff,<br><br>CONSTITUTION PARTY OF UTAH, a registered political party of Utah,<br><br>     Plaintiff and Intervenor,<br><br>v.<br><br>GARY R. HERBERT, in his Official Capacity as Governor of Utah, and SPENCER J. COX, in his Official Capacity as Lieutenant Governor of Utah,<br><br>     Defendants. | **STATE DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND MEMORANDUM OF LAW IN SUPPORT**<br><br><br><br><br>Case No. 2:14-cv-00876-DN-DBP<br><br>Judge David Nuffer<br>Magistrate Judge Dustin B. Pead |

# TABLE OF CONTENTS

MOTION..................................................................................................................... iii

MEMORANDUM OF LAW ......................................................................................... iv

INTRODUCTION ........................................................................................................ iv

RELEVANT FACTS .................................................................................................... iv

LEGAL STANDARD ................................................................................................... 1

LEGAL ANALYSIS ..................................................................................................... 2

    I.     The Political Parties' Trademark Infringement and Unfair Competition Claims Are Analyzed Under the Same Federal Standard. .............................................. 2

    II.    The Political Parties' Trademark Claims Are Barred by Eleventh Amendment Immunity. ............................................................................................................. 5

    III.   The Political Parties' Trademark Claims Fail on Their Merits. ..................... 7

        A.    Plaintiffs' Trademark Claims Should Be Dismissed Because the Placement of a Political Party Name and Symbol is Not "Commercial Use." ............................. 8

          1.    The Lanham Act's Purpose is to Protect Against Commercial Injuries. ................... 9

          2.    The Tenth Circuit Requires that a Defendant's Use Be Commercial, and in Connection with Goods and Services, to Create Lanham Act Liability. ................. 10

          3.    Courts Around the Country Prohibit Lanham Act Claims When the Defendant's Use is Noncommercial. ..................................................................... 13

          4.    Using a Political Party's Trademark on a Ballot Is Not a Commercial Use in Connection with Goods or Services. ........................................................ 15

        B.    The Parties Cannot Prevail Because They Consent to the Use of Their Mark on the Ballot. ................................................................................................................ 18

        C.    The Political Parties Wrongly Conflate Their First Amendment and Lanham Act Rights. .................................................................................................................. 21

CONCLUSION ........................................................................................................... 22

## <u>MOTION</u>

Defendants Governor Gary Herbert and Lieutenant Governor Spencer Cox (the State Defendants), pursuant to Federal Rules of Civil Procedure 12(c) and DUCivR 7–1, move for partial judgment on the pleadings on Plaintiff Utah Republican Party's Third Cause of Action (Trademark Infringement)[1] and Plaintiff/Intervenor Constitution Party of Utah's Third Claim for Relief (Trademark Infringement).[2]   The bases of this motion are:

- The trademark claims brought by the Constitution Party and Republican Party (the Political Parties) are barred by Eleventh Amendment/sovereign immunity;

- The Political Parties' trademark claims fail to state a claim because the State Defendants have not "used" any of the Political Parties' alleged trademarks "in commerce" or "in connection with" any good or service; and

- Pursuant to the statutory scheme, the Political Parties consent to and permit the state to use their names and symbols on a ballot.

For these reasons, and as fully described in the following Memorandum of Law in Support of the Motion, the State Defendants respectfully request that the Court enter judgment, dismissing the Political Parties' trademark claims with prejudice.

---

[1] (Constitution Party's Am. Compl. (doc. 30) at ¶¶ 42–47.)
[2] (Utah Republican Party's Compl. (doc. 2) at ¶¶ 118–122.)

## MEMORANDUM OF LAW

### INTRODUCTION

Plaintiff Utah Republican Party, and Plaintiff/Intervenor Constitutional Party of Utah (collectively, the Political Parties) set forth a unique premise:  Because Utah's laws set limits on which candidates appear on a ballot, their intellectual property rights in their names and symbols are infringed if the political process ends up choosing a candidate that the central party would not prefer.  The State Defendants are shielded from suit, even for injunctive relief, by Eleventh Amendment Immunity on this novel claim.  But even if the State Defendants were not immune from suit, the Political Parties' theory has no basis in trademark law, and would expand the protections afforded by the Lanham Act beyond Congress's intent of protecting commercial interests from unfair competition and confusion in the marketplace.  The State Defendants are not "competing" with the Political Parties, in commerce or otherwise.  The State Defendants are not commercially using any of the Political Parties' trademarks.  And the State Defendants, to the extent they "use" the Political Parties' marks, are only using them because the Political Parties specifically permit their use.  The Political Parties' trademark claims suffer fatal flaws which cannot be corrected.  This Court should therefore dismiss the claims with prejudice.

### RELEVANT FACTS[3]

1.     Plaintiff Utah Republican Party pleads that it is an unincorporated association established under Title 20A of the Utah Code.  It is a registered political party, as defined by Utah election law predating 2015.[4]

---

[3] The facts are taken from the Political Parties' Complaints and facts that may be judicially noticed.

[4] (Republican Party's Compl. (doc. 2) at ¶¶ 11, 32.)

2.      Intervenor-Plaintiff Constitutional Party of Utah is a registered political party of Utah and part of the National Constitution Party.[5]

3.      The Republican Party of Utah applied to register a service mark with the United States Patent and Trademark Office on February 04, 2015.[6]  That trademark is a design-plus-word mark and is described as "an elephant where the top half has three stars therein and the bottom half has the letters UTGOP therein, all of which is surrounded by a circle."  The application seeks to register the mark under International Class 035 and U.S. Classes 100, 101, and 102, for various political services.[7]  The first-use date on the application is listed as November 2014.  As the specimen of use of the mark, the Republican Party of Utah submitted an Official Ballot from Salt Lake County dated Tuesday, November 4, 2014.[8]  The Republican Party of Utah has not received a trademark registration for the mark.[9]

4.      The Constitution Party of Utah filed a trademark registration with the Utah Department of Commerce for "The Constitution Party of Utah," on December 12, 2014.[10]  The trademark description is "the words 'Constitution Party of Utah' and an image of a flying eagle."  The application registered the mark under International Class 035.  The services listed for this

---

[5] (Constitution Party's Am. Compl. (doc. 30) at ¶ 1.)
[6] *See* Trademark Application Serial No. 86/524,823 (attached hereto as Exhibit A).
[7] The services listed on the application are as follows: "[p]olitical campaign activities, namely, arranging and conducting political events, meetings, and workshops; Political consultants; Political party services, namely, promoting the interests of a political organization; Membership services, namely, providing support to elected officials; Administering a club in the field of politics; Membership services, namely, providing support to elected officials, volunteers, and political candidates, and providing political caucuses; Endorsement services, namely, promoting the goods and services of others." *Id*; *see also* (Republican Party's Compl. (doc. 2) at ¶ 47.)
[8] *See* Specimen of Use, USPTO Trademark Application Serial No. 86/524,823 (attached hereto as Exhibit B, *available at* http://tsdr.uspto.gov/documentviewer?caseId=sn86524823&docId=SPE20150207092333.)
[9] *Id.*
[10] *See* Certificate of Trademark No. 9263625-0190 (attached hereto as Exhibit C).

class on their application was "Advertising; business management; business administration; office functions."  The indicated the mode or manner in which the Mark will be used is "On political advertisements, T-shirts, banners, cups, paraphernalia, websites etc."  The application notes a first use date of January 2000.[11]

5.      Utah Senate Bill 54 ("SB 54"), enacted in the 2014 General Session, modified the Election Code as it relates to the nomination of candidates, primary and general elections, and ballots.[12]

6.      The provisions in SB 54 replaced Utah's caucus and convention system for selecting political nominees to a system that incorporates the ability for a candidate to be placed to the primary ballot when they meet threshold requirements for voter support.[13]

7.      SB 54 allows for two types of political parties, "Registered" political parties and "Qualified" political parties.  A Registered political party ("RPP") is an organization of voters that: participated in the last regular general election and in at least one of the last two regular general elections, polled a total vote for any of its candidates for any office equal to 2% or more of the total votes cast for all candidates for the United States House of Representatives in the same regular general election; or has complied with the petition and organizing procedures of 20A-8.[14]

---

[11] Id.

[12] See S.B. 54, 2014 Gen. Sess., [hereinafter "S.B. 54"] (amending portions of Utah Code tit. 20A, chs., 1, 5, 6, 9, and enacting portions of Utah Code tit. 20A chs. 1, 9.) A copy of the session law is attached as Exhibit 1 to the Republican Party's Amended Motion for Preliminary Injunction (doc. 13-1).

[13] (Constitution Party's Am. Compl. at ¶ 10; Republican Party's Compl. at ¶ 24.)

[14] (Id.); see also Utah Code § 20A-8-101(4).

8.      To elect to participate as an RPP for an upcoming election, a party must comply with Section 20-9-403.  This means they must declare their intent to participate in the next primary election, or declare that the party chooses not to have candidates on the ballot at the next general election.[15]  This is done by filing their statement with the Lt. Governor no later than 5pm on November 15 of the preceding odd-numbered year if they are a continuing party.

9.      SB54 requires that an RPP identify one or more registered parties whose members may vote for their candidates and whether or not unaffiliated voters may vote for their candidates.[16]

10.     Under SB 54 a candidate for elective office may choose to run for office by demonstrating they have a reasonable amount of party voters' support by completing a nomination petition process and obtaining certification.[17]  Furthermore, if the leaders from the party designated by the candidate as his or her party (or any other individuals) have an objection to a candidate's party designation, Utah law provides that those individuals may file an objection within five days. [18].

11.     A QPP is a registered political party that: a) allows voters who have not registered with a political party ("unaffiliated") to vote for their party's candidates in a primary election; b) permits a delegate of its party to vote on a candidate nomination in the party's convention remotely, or provides a procedure for designating an alternative delegate; c) does not hold the

---

[15] S.B. 54 § 13(2)(a)(i) (codified at Utah Code § 20A-9-403(2)(a)(i)).
[16] S.B. 54 § 13(2)(a)(ii) (codified at Utah Code § 20A-9-403(2)(a)(ii)).
[17] S.B. 54 §§ 13(3)-(4), 14(1) (codified at Utah Code §§ 20A-9-403(3)-(4), -405(1)).
[18] Utah Code § 20A-9-202(5)(a).

party's convention before April 1 of an even year and; d) permits members of its own party to seek nomination by either the party's convention process, or by collecting signatures.[19]

12.     Utah law requires that "each ticket is placed in a separate column on the ballot in the order specified under Section 20A-6-305 with the party emblem, followed by the party name, at the head of the column" and "the party name or title is printed in capital letters not less than one-fourth of an inch high."[20]

13.     On the paper ballot sheets in regular general elections, "the party designation of each candidate who has been nominated by a registered political party under Subsection 20A-9-202(4) or Subsection 20A-9-403(5) is printed immediately adjacent to the candidate's name...."[21] On an electronic ballot, "the party designation of each candidate who has been nominated by a registered political party under Subsection 20A-9-202(4) or Subsection 20A-9-403(5) is displayed adjacent to the candidate's name...."[22]

14.     If a candidate is unaffiliated, not affiliated with an RPP, or not nominated with an RPP in accordance with Utah law's requirements, the candidate is listed on the ballot "without a party circle."[23]

15.     Utah law further requires that, in the preparation of ballots for the general election, the election officer must ensure that "no symbols, markings, or other descriptions of a political party or group, except for a registered political party that has chosen to nominate its candidates in accordance with Section 20A-9-403" may be used on the ballot and that there be...

---

[19] S.B. 54 § 10(12)(a)–(d) (codified at Utah Code § 20A-9-101(12)(a)-(d)).
[20] Utah Code § 20A-6-301(1)(d).
[21] S.B. 54 § 7(1)(g) (codified at Utah Code § 20A-6-303(1)(g)).
[22] S.B. 54 § 8(1)(g) (codified at Utah Code § 20A-6-304(1)(g)).
[23] S.B. 54 § 5(1)(g) (codified at Utah Code § 20A-6-301(1)(g)).

"no indication that a candidate for elective office has been nominated by, or has been endorsed by, or is in any way affiliated with a political party or group, unless the candidate has been nominated by a registered political party in accordance with Subsection 20A-9-202(4) or Subsection 20A-9-403(5)"[24]

16.     Utah law places the burden on each election officer to "ensure that: (a) each person nominated by any registered political party under Subsection 20A-9-202(4) or Subsection 20A-9-403(5), and no other person, is placed on the ballot: (i) under the registered political party's name and emblem, if any; or (ii) under the title of the registered political party as designated by them in their certificates of nomination or petition, or, if none is designated, then under some suitable title; (b) the names of all unaffiliated candidates that qualify as required in Title 20A, Chapter 9, Part 5, Candidates not Affiliated with a Party, are placed on the ballot."[25]

17.     Further, "[a] filing officer may not permit an official ballot at a regular general election to be produced or used if the ballot denotes affiliation between a registered political party or any other political group and a candidate for elective office who was not nominated in the manner prescribed in this section or in Subsection 20A-9-202(4)."[26]

18.     In other words, the only way a party's name, "circle," or other symbol may be shown as affiliated with a candidate is if the political party consents to its use by notifying the Lieutenant Governor of its choice to be an RPP or QPP, and the proper election procedures are followed.[27]

---

[24] S.B. 54, § 5(1)(a)(ii)-(iii) (codified at Utah Code § 20A-6-301(1)(a)(ii)-(iii)).
[25] S.B. 54 § 5(2) (codified at Utah Code § 20A-6-301(2)).
[26] S.B. 54 § 13(1)(c) (codified at Utah Code § 20A-9-403(c)).
[27] *See* Paragraphs 8–17, *supra*.

## LEGAL STANDARD

Defendants seek partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  That rule provides that a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial …."[28] A 12(c) motion should be reviewed generally under the same standard of review applicable to a Rule 12(b)(6) motion.[29]  In reviewing a 12(b)(6) motion to dismiss, the court assumes the truth of well-pleaded facts and draws reasonable inference in a light most favorable to the plaintiff.[30]  But a claim survives only if "there is plausibility in the complaint."[31]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[32]

In reviewing a motion to dismiss, the Court may rely on the facts as alleged in the complaint, but may also rely on all documents adopted by reference in the complaint, documents attached to the complaint, documents "central" to plaintiff's claims, or facts that may be judicially noticed.[33]

---

[28] Fed. R. Civ. P. 12(c).
[29] *Needham v. Fannie Mae*, 854 F. Supp. 2d 1145, 1148 (D. Utah 2012) (citing *Nelson v. State Farm Mut. Auto. Ins. Co*., 419 F.3d 1117, 1119 (10th Cir. 2005)).
[30] *E.g.*, *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011).
[31] *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citations and quotations omitted).
[32] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).
[33] *See* Fed. R. Civ. P. 10(c); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007); *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991); *see also Needham*, 854 F. Supp. 2d at 1148 (utilizing documents referred to and central to plaintiff's claims in resolving a motion for judgment on the pleadings without converting the motion to a motion for summary judgment); *see also Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (judicially noticing, and permitting a court to consider, public documents filed with the USPTO on reviewing a judgment on a motion to dismiss).

**LEGAL ANALYSIS**

In this case, the Political Parties allege that SB54 should be enjoined, and the Political Parties be awarded damages, because SB54 mandates the use of certain political party names and "circles" in accordance with candidates who have been nominated through SB54's process.[34]  In other words, the Political Parties contend, applying their names and symbols to candidates on a ballot following a process that they do not prefer, constitutes trademark infringement.

The Political Parties' claims fail because the State Defendants are immune from suit pursuant to the Eleventh Amendment to the U.S. Constitution.  They fail on their merits, because the State Defendants have not "used" the Political Parties' marks "in commerce," nor have they "used" them "in connection with goods and services," all of which are requirements for a trademark infringement claim.  Finally, even if the Court believes that the Political Parties have stated a claim under the "commercial use" elements, the Political Parties' claims fail because they have consented to the use of their names, symbols, and circles on ballots.

I.     **The Political Parties' Trademark Infringement and Unfair Competition Claims Are Analyzed Under the Same Federal Standard.**

Both the Utah Republican Party and the Utah Constitution Party allege that SB54 should be enjoined, and damages awarded, because the enactment of SB54 would cause infringement of their common law trademarks.  The Utah Republican Party grounds its claim in federal law, citing to Lanham Act sections 34, 35, and 43(a), 15 U.S.C. §§ 1116, 1117 and 1125.[35]  The Constitution Party refers only to a state law trademark registration and "statutory and common law trademark infringement" as the basis of the cause of action, but seeks damages and fees

---

[34] (Republican Party Compl. (doc. 2) at ¶ 121–122; Constitution Party Am. Compl. (doc. 30) at ¶¶ 43–45.)
[35] (*See* Republican Party Compl. (doc. 2) at ¶¶ 119–122.)

pursuant to federal law.[36]   Regardless, there is no discernable difference between the standards

applied to the claims based on Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and Utah

common law unfair competition standards.[37]   Therefore, the Court may analyze the Political

Parties' trademark infringement claims utilizing federal law.

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides two separate rights of

action.  One is a right for false advertising, a right which is not at issue in this case.[38]  The second

is a right of action known as unfair competition.  This cause of action is the functional equivalent

of a civil action for trademark infringement. [39]  The unfair competition provisions of the Lanham

Act provide a right of action to the owner of a trademark against "any person who, on or in

connection with any goods or services … uses in commerce any word, term name, symbol, or

device … which is likely to cause confusion, or to cause mistake, or to deceive as to the

affiliation, connection association of such person with another person, or as to the origin,

sponsorship, or approval of his or her goods, services, or commercial activities by another

---

[36] (*See* Constitution Party Am. Compl. (doc. 30) at ¶¶ 43, 46, 49.)

[37] See, e.g., *Utah Lighthouse Ministry, Inc. v. Discovery Computing, Inc.*, 506 F. Supp. 2d 889, 902 (D. Utah 2007) (dismissing state statutory and common law unfair competition claims because the requirements, including a commercial use requirement, were "similar to the requirements of the Lanham Act"); *Framed Wall Art, LLC v. PME Holdings, LLC.*, No. 2:08-CV-781-DAK, 2008 WL 5205822, at * 3 (D. Utah Dec. 12, 2008) (mem. decision & ord. denying prelim. inj. not selected for publication) (applying the conclusions regarding the Lanham Act to state trade dress claims); *digEcor, Inc. v. E.Digital Corp.*, No. 2:06-CV-437 CW, 2009 WL 928679, at * 4 (D. Utah April 2, 2009) (ord. & mem. decision not selected for publication) (recognizing Utah's common law unfair competition cause of action and denying summary judgment on the claim "[f]or the same reasons that the court [denied] digEcor's Lanham Act claim").

[38] *See* Lanham Act § 43(a)(1)(B); 15 U.S.C. § 1125(a)(1)(B).

[39] *E.g. Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004); *Jordache Enters., Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1484 (10th Cir. 1987).

person ....."[40]  For a plaintiff to prevail on such a claim, it must plead and prove "(1) that plaintiff

has a protectable interest in the mark; (2) that the defendant has used 'an identical or similar

mark in commerce'; and (3) that the defendant's use is likely to confuse consumers."[41]

For the purposes of this motion only, the State Defendants assume that the Political

Parties have a protectable interest in the marks they have asserted.[42]  Likewise, the State

Defendants do not address whether the "use" on the ballot is likely to "confuse consumers"

(though the State Defendants do not admit that voters in a voting booth are "consumers" under

the Lanham Act).  But the Political Parties' trademark claims should be dismissed because the

Parties' claims fail the second element as a matter of law.  Listing a party's name or symbol on a

ballot is not commercial use of the Political Parties' marks.  Furthermore, because they choose

which track of SB54 they proceed under, and because they voluntarily offer the use of their

marks on the ballot, the Political Parties' cannot prove that the State Defendants are using the

---

[40] *See* Lanham Act § 43(a), 15 U.S.C. § 1125(a).

[41] *1-800 Contacts, Inc. v Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013).

[42] Because the Political Parties do not have federal registrations, they bear the burden of proving protectability.  Protectability is not a foregone conclusion in this case.  The Republican Party makes no allegation of protectability of their mark, and does not allege what goods or services to which their mark has been applied, other than acting as a party identifier for candidates on a ballot.  (*Cf.* Republican Party Compl. (doc. 2) at ¶121.) The Constitution Party alleges in its complaint only that "has developed a common law trademark and good will associated with its name." (Constitution Party Am. Compl. (doc. 30) at ¶ 43.)  Of course, trademark rights do not exist in a vacuum; they must be associated with particular goods or services.  *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918) ("There is no such thing as property in a trademark except as a right appurtenant to an established business or trade in connection with which the mark is employed.  The law of trade-marks is but a part of the broader law of unfair competition; the right to a particular mark grows out of its use, not its mere adoption; its function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his; and it is not the subject of property except in connection with an existing business."); *Intrawest Fin. Corp. v. W. Nat'l Bank of Denver*, 610 F. Supp. 950, 956 (D. Colo. 1985) ("It is axiomatic that a trademark has no existence apart from the good will of the product or service it symbolizes.").  Neither Political Party has alleged in its complaint facts to show that they have a protectable mark used in commerce.

marks "without consent."  Before analyzing the merits of the Political Parties' claims in detail,

the State Defendants' immunity must be first addressed.

## II.     The Political Parties' Trademark Claims Are Barred by Eleventh Amendment Immunity.

The trademark infringement claims brought by the Political Parties are barred by the

Eleventh Amendment to the U.S. Constitution.  The amendment provides:

> The Judicial power of the United States shall not be construed to extend to any
> suit in law or equity, commenced or prosecuted against one of the United States
> by Citizens of another State, or by Citizens or subjects of any Foreign State.[43]

Such immunity bars suit against a state by its own citizens,[44] and to suits against state officials

sued in their official capacities for retrospective monetary relief.[45]

In *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*,[46]

the United States Supreme Court held that, despite Congress's explicit attempt to abrogate

sovereign immunity in federal trademark cases,[47] the Eleventh Amendment protects states from

Lanham Act false advertising suits.[48]   Noting that Congress did not have the authority to

abrogate sovereign immunity under the Commerce Clause,[49] the Court held that the common law

torts of unfair competition would not "by definition" encompass property interests protected by

the Fourteenth Amendment, and thus could not be a valid basis to abrogate sovereign

immunity.[50]  The Court also held that a state's voluntary choice to engage in interstate marketing

---

[43] U.S. Const. amend. XI.
[44] *Hans v. Louisiana*, 134 U.S. 1, 10–11, 15–21 (1890).
[45] *Edelman v. Jordan*, 415 U.S. 651, 676–77 (1974).
[46] 527 U.S. 666 (1999).
[47] *See* Lanham Act § 43(a)(2), 15 U.S.C. § 1125(a)(2).
[48] *Fla. Prepaid*, 527 U.S. at 690.
[49] *Id.* at 672.
[50] *Id.* at 674.

and administration of a government program likewise did not result in an implicit waiver of sovereign immunity.[51]

The Court's reasoning in *Florida Prepaid* has been held to apply to all federal unfair competition claims. A leading trademark scholar has concluded that "a trademark owner cannot sue a state for infringement in violation of the Lanham Act in either federal court or state court,"[52] and lower courts have held that unfair competition claims are barred by the Eleventh Amendment.[53] As a result, the Political Parties' federal claims for damages resulting from any infringement are barred.[54]

The Political Parties' requests for injunctive and declaratory relief are also barred. The Constitution Party's Amended Complaint alleges only a state trademark registration[55] and mentions only "willful statutory and common law trademark infringement."[56] To the extent the Constitution Party seeks to enforce state or common-law rights, and seeks injunctive, declaratory, or monetary relief pursuant to state law, those claims are also foreclosed by the Eleventh Amendment.[57]

---

[51] *Id.* at 685–86.

[52] J. Thomas McCarthy, 4 McCarthy on Trademarks and Unfair Competition § 25:66 (4th ed. updated 2015); *see also Bd. of Regents of Univ. of Wisc. Sys. v. Phoenix Software Int'l, Inc.*, 565 F. Supp. 2d 1007, 1013 (W.D. Wisc. 2008) (applying *Florida Prepaid* to Lanham Act trademark infringement and unfair competition claims).

[53] E.g., *State Contracting & Eng'g Corp. v. Florida*, 258 F.3d 1329, 1335–36 (Fed. Cir. 2001); *Va. Polytechnic Inst. & State Univ. v. Hokie Real Estate, Inc.*, 813 F. Supp. 2d 745, 751–52 (W.D. Va. 2001).

[54] (Republican Party's Compl. (doc. 2) at ¶ 122; Constitution Party's Am. Compl. (doc. 30) at ¶ 49.)

[55] (Constitution Party's Am. Compl. (doc. 30) at ¶ 43.)

[56] (*Id.* at ¶ 47.)

[57] *Pennhurst State Sch. v. Halderman*, 465 U.S. 89, 106 (1984).

The Republican Party's request for injunctive relief pursuant to the Lanham Act against Governor Herbert, and any similar request implicit in the Constitution Party's Amended Complaint, are also barred. Eleventh Amendment immunity does not bar suits for prospective injunctive relief to prevent the violation of federal law against a state official in her official capacity.[58] However, to prevail on such a claim, the officer must "have some connection with the enforcement of the act."[59] Neither political party has alleged any facts to connect Governor Herbert, in his official capacity, to any alleged trademark infringement.[60]

Eleventh Amendment Immunity bars the Political Parties' claims for Lanham Act damages, injunctive relief based on state unfair competition law, and injunctive relief against Governor Herbert based on trademark infringement.

## III.   The Political Parties' Trademark Claims Fail on Their Merits.

If Eleventh Amendment immunity does not bar the Political Parties' trademark claims (or the Court would be inclined to allow either party to amend their complaint to state a claim for injunctive relief under *Ex parte Young*) the trademark claims should nonetheless be dismissed on

---

[58] *Ex parte Young*, 209 U.S. 123, 156 (1908).

[59] *Id.* at 157.

[60] (*Cf.* Republican Party's Compl. (doc. 2) at ¶¶ 12, 14.)   Additionally, neither party has sufficiently alleged facts in their complaint to plead a claim for injunctive relief against Lieutenant Governor Cox.  Though the parties have alleged that Lieutenant Governor Cox is the "chief election officer," of the State of Utah, the Parties have made no allegations that Lieutenant Governor Cox is the individual who will actually engage in any actions infringing the Political Parties' trademarks. *See Pennington Seed, Inc. v. Prod. Exch'g No. 299*, 457 F.3d 1334, 1342 (Fed. Cir. 2006) (holding that a university official may not be sued for injunctive relief for patent infringement if he has only a "general, state-law obligation to oversee a University's patent policy"); *Parallel Synthesis Techs., Inc. v. DeRisi*, No. 5:13-cv-05968-PSG, 2014 WL 4748611, at * 8 (N.D. Cal. Sept. 23, 2014) (ord. not selected for publication) (recognizing that only a state official that authorized the licensing of a patent and the actual posting of the technology to a website would be liable for a patent infringement injunction, "and not his or her supervisors— however far up the chain").

their merits.  The Lanham Act is not an appropriate vehicle to address the types of harms asserted by the Political Parties.  And even if the Court would permit the Political Parties to shoehorn their complaints into the commercial rubric of the Lanham Act, there can be no unfair competition because the Political Parties' marks do not appear on the ballot unless the parties permit the State to put them there.

> A. *Plaintiffs' Trademark Claims Should Be Dismissed Because the Placement of a Political Party Name and Symbol is Not "Commercial Use."*

To state a trademark infringement claim, a party must plead and prove that the defendant used a similar or identical mark "in commerce," and "in connection with goods and services."[61] The Political Parties have not even *pleaded* that the State Defendants have "used" any of the marks "in commerce" or "in connection with any goods or services."[62]  This failure is fatal to the Political Parties' trademark claims.[63]  But even if the Court were to imply into the complaints that the placement of the Political Parties' marks electoral ballots is a "use" of the mark by the State Defendants, that use is neither "in commerce" nor "in connection with any goods or services" as a matter of law.[64]

---

[61] *1-800 Contacts, Inc. v Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013); Lanham Act § 43(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A).

[62] The Republican Party alleges only that the State uses the marks "in a way in its administration of the primary and general elections in Utah …."  (Republican Party Compl. (doc. 2) at ¶ 121.) The Constitution Party alleges only that "SB54 destroys and/or infringes the Constitution Party's trademark, good will, and name …." (Constitution Party Am. Compl. (doc. 30) at ¶ 43.)

[63] *HQM, Ltd. v. Hatfield*, 71 F. Supp. 2d 500, 504 (D. Md. 1999) (granting 12(b)(6) motion on plaintiffs' claim that registration of a domain name for e-mail services violated the Lanham Act, because "[p]laintiffs fail to allege—even "on information and belief"—that Defendant uses their mark in connection with any "goods or services," much less in a way that would satisfy the likelihood of confusion test.").

[64] Lanham Act § 43(a), 15 U.S.C. § 1125(a).

**1.   The Lanham Act's Purpose is to Protect Against Commercial Injuries.**

The U.S. Supreme Court recently reaffirmed the importance of the commercial nexus required to bring a Lanham Act claim.   In *Lexmark International, Inc. v. Static Control Components, Inc.*,[65] the Court examined the issue of who could sue for harm under the Lanham Act's protection against false advertising.[66]   The Court determined that someone who is not a direct competitor with the allegedly nefarious advertiser may state a claim under the Lanham Act if the plaintiff's injury falls within the "zone of interests protected by the law invoked," and that the plaintiff's injuries are proximately caused by violations of the statute.[67]   It rejected the "expansive reading" of the statute, that "any person who believes that he or she is likely to be damaged" by a defendant's actions may sue under the statute.[68]   Citing to the enumerated purposes of the Lanham Act and common law,[69] the Court recognized that the Act is "concerned with injuries to business reputation and present and future sales."[70]   Therefore, a plaintiff must plead an "injury to a commercial interest in reputation or sales" to come within the scope of the

---

[65] ___ U.S. ___, 134 S. Ct. 1377 (2014).

[66] False advertising causes of action comprise different legal elements from a false association claim under 43(a)(1)(A), *Lexmark*, 134 S. Ct. at 1384, but the Court did not always limit its analysis to false advertising claims.  *See Lexmark*, 134 S. Ct. at 1391 ("[T]he Lanham Act authorizes suit only for commercial injuries …. We thus hold a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wright by the defendant's advertising…."). Furthermore, at least some courts have applied *Lexmark* to false association claims under Section 43(a)(1)(A).  *See Belmora LLC v. Bayer Consumer Care AG*, ___ F. Supp. 3d ___, 2015 WL 51871, at *2 (E.D. Va. Feb. 6, 2015); *Lundgren v. AmeriStar Credit Solutions, Inc.*, ___ F. Supp. 2d ___, 2014 WL 4079962, at **7–8 (W.D. Pa. Aug. 18, 2014) (holding that because the damages alleged by plaintiff flowed only from his wrongful termination rather than his claims of false association based on his appearance in his former employer's commercials).

[67] *Lexmark*, ___ U.S. at ___, 134 S. Ct. at 1388, 1390 (further citations and quotations omitted)

[68] *Id.* at 1388.

[69] *See* Lanham Act § 45, 15 U.S.C. § 1127; *Lexmark*, 134 S. Ct. at 1389–90.

[70] *Id.* at 1390.

Act.[71]

The *Lexmark* case focused on the plaintiff's *commercial* injury. It further reinforced the purposes of the Lanham Act—to protect consumer confusion in *commercial* transactions. It is through that lens that this Court should examine the elements of the Political Parties' trademark infringement claims, and carefully scrutinize the elements required for the Political Parties to state a claim. A right of a political party to choose how it conducts its primaries, and who it endorses on a ballot is not within the "zone of interests protected" by the Lanham Act.

### 2. The Tenth Circuit Requires that a Defendant's Use Be Commercial, and in Connection with Goods and Services, to Create Lanham Act Liability.

In accord with *Lexmark*, the Tenth Circuit has placed a special emphasis on the requirement that, for a plaintiff to succeed on a trademark infringement claim, the allegedly infringing use by the defendant must be commercial in nature. In *Utah Lighthouse Ministry v. Foundation for Apologetic Information & Research (FAIR)*, the Tenth Circuit Court of Appeals affirmed the trial court's ruling holding that the defendant's use of the plaintiff's website trademarks were not sufficiently commercial to subject the defendants to Lanham Act liability.[72] The plaintiffs in that case ran a website critical of the Church of Jesus Christ of Latter-day Saints; the defendant, a volunteer organization that responds to criticism of the Church, used the plaintiff's marks with the addition of other notations to satirize the plaintiff's critique of the LDS

---

[71] *Id.*

[72] *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research (FAIR)*, 527 F.3d 1045, 1052–53 (10th Cir. 2008), *aff'g Utah Lighthouse Ministry, Inc. v. Discovery Computing, Inc.*, 506 F. Supp. 2d 889 (D. Utah 2007).

church.[73]  The FAIR website had an online bookstore, and the website that contained the critique of Utah Lighthouse Ministry, hyperlinked to the FAIR website.[74]

In determining that FAIR had not used Utah Lighthouse Ministry's marks commercially, the court rejected arguments that the fact that FAIR's mere diversion of users away from Utah Lighthouse Ministry's website, and FAIR's hyperlinking to websites that sell goods were sufficient to show a defendant's "commercial use" of a mark for the purposes of the Lanham Act.  It noted that "[t]he Lanham Act is intended 'to protect the ability of consumers to distinguish among competing producers, not to prevent all unauthorized uses" and agreed with other courts that "trademark rights cannot be used 'to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view.'"[75]  The "overwhelmingly noncommercial" nature of the site made it too much of a "roundabout path" to the advertising or commercial use of others for the Lanham Act's protections to be triggered.[76]

The Court likewise rejected Utah Lighthouse Ministry's argument that the mere fact that the *trademark owner* (the plaintiff) sold goods or services is sufficient to state a Lanham Act claim.  It held:

> Such an interpretation eliminates the requirement of an economic competitor and is therefore inconsistent with the purpose of the Lanham Act "to protect the ability of consumers to distinguish among competing producers…. The "interference" theory has also been criticized on the ground that it would "place most critical, otherwise protected consumer commentary under the restrictions of the Lanham Act."  In our view, the defendant in a trademark infringement and unfair competition case must use the mark in connection with the goods or services of a competing producer, not merely to make a comment on the

---

[73] *Id.* at 1049.
[74] *Id.*
[75] *Id.* at 1052–53 (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992); *L.L. Bean, Inc. v. Drake Publishers, Inc.,* 811 F.2d 26, 29 (1st Cir. 1987)).
[76] *Id.* (quoting *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 679 (9th Cir. 2005)).

> trademark owner's goods or services.  The Lanham Act addresses the specific
> problem of consumer confusion about the source of goods and services created by
> the unauthorized use of trademarks.  Unless there is a competing good or service
> labeled or associated with the plaintiff's trademark, the concerns of the Lanham
> Act are not invoked. [77]

Finally, the Tenth Circuit Court of Appeals rejected the argument that because the Internet is an

instrument of commerce, FAIR had made commercial use of the Utah Lighthouse Ministry's

mark.  "[T]his does not mean that any use of the Internet is necessarily commercial for the

purposes of the Lanham Act, as UTLM advocates.  Moreover, conflating these two 'commerce'

requirements would greatly expand the scope of the Lanham Act to encompass objectively

noncommercial speech.  We therefore decline to adopt UTLM's proposed rule that any use of a

trademark on the Internet is a use "in connection with goods or services."[78]

The law in the Tenth Circuit is clear:  A *plaintiff's* "commercial use" of her mark is

insufficient to bring a defendant's noncommercial use within the purview of the Lanham Act.

The fact that a defendant's use of the plaintiff's trademark diverts users away from the plaintiff is

insufficient.  The fact that the defendant may be tangentially related to commerce, or use a

medium of commerce (like the Internet) is insufficient.  To trigger Lanham Act liability, a

defendant must actually "use" the mark "in connection with goods and services" "in commerce."

---

[77] *Id.* at 1053–54 (citing and quoting *Two Pesos*, 505 U.S. at 77; *Bosley*, 403 F.3d at 679; *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924) ("A trademark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his."); *Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 582–83 (2nd Cir. 1991) ("[T]rademark infringement protects only against mistaken purchasing decisions and not against confusion generally.") (further citations and quotations omitted)); *see also Bd. of Directors of Sapphire Bay Condominiums W. v. Simpson*, Civil Action No. 04-62, 2014 WL 4067175, at ** 3–4 (D.V.I. Aug. 13, 2014) (mem. not selected for publication) (noting that the "Lanham Act only regulates commercial speech" and holding that the allegation that a gripe website used plaintiff's marks "in commerce" "because the websites economically injured and continue to injure the Board" was an insufficient basis under the Lanham Act).

[78] *Id.* at 1054.

### 3.   Courts Around the Country Prohibit Lanham Act Claims When the Defendant's Use is Noncommercial.

Courts around the country have shared this concern with expanding the scope of Lanham Act liability when the speech at issue is not commercial.  For example, a website that wrote a blog post criticizing a recently released book did not use the book owner's trademark "in commerce" to trigger Lanham Act protection, even though the blog publisher wrote about the same topics and created other publications for profit.[79]

In another case, the court held that an employer did not commercially use a union's marks commercially, when the employer used duplications of a union letter demanding termination of employees who did not pay union dues, to encourage workers not to unionize.[80] Even though the employer copied the union's logo, and even though the employer and the union both engaged in commercial activities in general, the court held that the use was not commercial.[81]  Another district court reached the same conclusion on the reverse facts—a labor

---

[79] *Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. Cir. 2013).

[80] *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr.*, 914 F. Supp. 651, (D. Me. 1996), *aff'd* 103 F.3d 196 (1st Cir. 1996).

[81] *Id*. at 655–56.  The Court held:

> Neither Defendants nor Plaintiffs are competing for the 'sale' to a consumer of their respective 'services.'  Instead, Defendants and Plaintiffs are competing for the vote from an employee, for assent to, support of, and participation in their respective visions of the proper ordering of the workplace.  The fact that some money is required to realize the union's particular vision does not suffice to render the realization of that vision a commercial 'service' for trademark purposes.
>
> Second, Plaintiffs misread "any goods and services" to include the holder's as well as the infringer's goods or services.  All registered marks are, by definition, 'in connection with' the mark holder's "goods or services,' All unauthorized uses of such marks, in turn, inherently bear that same connection. On Plaintiffs' reading, then, all unauthorized uses would be 'in connection with a [holder's] goods or services,' and no unauthorized use would ever be excluded by operation of this language.  This interpretation not only effectively reads the

union's use of a restaurant's trademark was not a Lanham Act violation because the parody flier which included information about health code violations was not a "misappropria[tion of] the mark in commerce" nor related to the "sale or advertising of a service."[82]

And back in the District of Utah, the court dismissed, on a 12(b)(6) motion, a trademark infringement claim brought against a group of anonymous individuals who created a parody website, with a fake press release, mimicking the trademarks and criticizing the political views of the leaders of Koch Industries.[83]   The Court held:

> Koch lacks any evidence or plausible theory as to how Defendants could have profited commercially from an anonymous spoof website that sold no products and solicited no donations, that was disclosed only to reporters, and that was only online for a matter of hours.  Defendants' speech proposed no commercial transaction. Instead, it sought to draw public attention to Koch's controversial stance on a political issue. Koch's trademark and unfair-competition claims, therefore, fall outside the scope of the Lanham Act and are foreclosed by the act's commercial-use requirement.[84]

These cases demonstrate the commercial requirement that must exist in all trademark infringement or unfair competition claims.  The Lanham Act requires a defendant's commercial use, and placing a political party's name, symbol, or circle cannot qualify.

---

language out of the statute, it ignores the critical function of this language, discussed above, to help delineate the scope of trademark property rights so that conflicts with the First Amendment are minimized.
*Id.*
[82] *WHS Entmnt. Ventures v. United Paperwokers Int'l Union*, 997 F. Supp. 946, 949–50 (M.D. Tenn. 1998).
[83] *Koch Indus., Inc. v. Does*, No. 2:10CV1275DAK, 2011 WL 1775765, at *5 (D. Utah May 9, 2011) (mem. decision & ord. not selected for publication).
[84] *Id.* at *5; *accord School of Visual Arts v. Kuprewicz*, 771 N.Y.S.2d 804, 810–11 (N.Y. Sup. Ct. 2003) (holding no Lanham Act violation by an individual who posted false job openings at the plaintiff's place of business, because the individual had no goods or services to advertise, the individual did not compete with the school in any way, and the ads actually directed prospective employees to contact the plaintiff).

### 4. Using a Political Party's Trademark on a Ballot Is Not a Commercial Use in Connection with Goods or Services.

The Lanham Act cannot be used to challenge laws which permit the use of trademarks on a ballot. The Ninth Circuit rejected a similar argument to the ones the Political Parties advance in this case in *Washington State Republican Party v. Washington State Grange*.[85] After the U.S. Supreme Court determined that Washington State's "top two" primary system did not facially violate the Washington political parties' association rights,[86] the parties' claims were remanded for consideration of their as-applied challenges. In addition to their First Amendment challenges, one of the political parties argued that the primary system violated their trademark rights.[87] The trial court granted the government's motion to dismiss, and the Ninth Circuit affirmed in three paragraphs.[88]

The court held that Washington did not use the political party's mark "in connection with the sale … of any goods or services." It agreed that activities of political parties can be "services" for trademark purposes, but held that the party had failed to show that the state offered competing services to the public.[89] Because the party had "not plausibly alleged that the *state* uses party labels on the ballot to perform a service in competition with" the political party, dismissal was appropriate.[90]

---

[85] 676 F.3d 784 (9th Cir. 2012).
[86] *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 457 (2008).
[87] *Wash. State Republican Party*, 676 F.3d at 795.
[88] *Id.*
[89] *Id.* (citing *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 679 (9th Cir. 2005)).
[90] *Id.*

Similarly, in *Sociedad Anonima Vina Santa Rita v. United States Department of the Treasury*,[91] the court held that a wine maker's trademark rights could not prevent the enactment of a rule permitting use of the trademarked terms by competitors as a designation of appellation. In the case, a Chilean wine manufacturer sold a number of wines under the brand name SANTA RITA.[92]  The Bureau of Alcohol, Tobacco, and Firearms ("ATF") established a rule designating "Santa Rita Hills" as an American Viticultural Area, which allowed vintners in the area to use the words as an appellation of origin on their wines.[93]  The winery sued, alleging, among other things, that the rule infringed on and diluted the value of the SANTA RITA trademark.  The district court rejected the winery's trademark argument.  It first noted that the ATF could not be liable because it "has not *used* the name 'Santa Rita' or 'Santa Rita Hills' in any meaningful sense whatsoever.  While the Bureau has recognized an AVA under the name 'Santa Rita Hills,' it has not used imitated, or copied the name at all."[94]  Though the rule may have allowed others to use the mark on wine, which may or may not give rise to a trademark action, the rule itself did not contravene the plaintiff's trademark rights.

Applying the legal authority to this case, it is clear that the statutory scheme created by SB 54 is not a commercial use required to maintain a Lanham Act Claim.  As stated in *Koch Industries*, "[t]he Lanham Act regulates only economic, not ideological or political, competition."[95]  Just as the Ninth Circuit recognized in Washington's scheme, in SB 54, there is not *any* competition between the Political Parties and the State Defendants, much less economic

---

[91] 193 F. Supp. 2d 6 (D.D.C. 2001).
[92] *Id.* at 8.
[93] *Id.* at 12.
[94] *Id.* at 20.
[95] *Koch Indus.*, No. 2:10CV1275DAK, 2011 WL 1775765, at *5.

competition.[96]   Utah expresses no interest in which candidate is elected.   It proposes no commercial transactions,[97]   It provides no "goods or services" on which a mark could be applied;[98]   it merely provides a vehicle for its citizens to decide who to elect as their public officials.   Just as the ATF in *Santa Rita*, or Washington State in *Washington State Republican Party*, the State of Utah does not "use" any political party mark when it regulates how political party names, symbols, and "circles" appear on a ballot.   As such, there can be no "competing goods or services labeled," and no commercial use.[99]   To the extent that Utah "uses" any marks, its "use" is much closer to those in *FAIR*, *Farah*, and *Vina Santa Rosa*, as non-commercial speech pursuant to a statutory scheme for candidates to be affiliated with a party.

---

[96] *Wash. State Repub. Party*, 676 F.3d at 795.   This is a significant factor that distinguishes the case at bar from cases in other jurisdictions in which political groups have been able to sue for trademark protection of their marks.   For example, in *United We Stand America, Inc. v. United We Stand, America New York, Inc.*, the Second Circuit held that that two political parties, who both alleged ties to United We Stand, Ross Perot's 1992 presidential campaign, were "using" the mark "in commerce" because the parties' political activities were "services" and use of marks "in commerce" is a jurisdictional imitation rather than a commercial requirement. 128 F.3d 86, 88–91 (2d Cir. 1997).   But in that case, there was no question that the two parties were actually competing with each other, and one group was attempting to palm off itself with another. Likewise, in *Hershey Co. v. Friends of Steve Hershey*, the court recognized that a political candidate's use of Hershey chocolate bar trade dress was "in commerce and was used "in connection with services" because apolitical candidate "used [the Hershey] design to promote a political candidate, disseminate political information, host campaign events and solicit donations." 33 F. Supp. 3d 588, 592–93 (D. Md. 2014).   The Court noted the serious First Amendment issues at play when applying the Lanham Act to political speech, unless the defendant is attempting, himself, to associate with the *consumer* brand. *Id.*   Unlike the political parties, or political candidate in *United We Stand* and *Hershey*, the State Defendants are simply not using the mark with any goods or services.   To hold otherwise would seriously expand the use of the Lanham Act outside its intended scope, and would have serious First Amendment speech implications in this and other cases.

[97] *Koch Indus.*, 2011 WL 1775765, at * 5.

[98] It places the (voluntarily given) marks on a ballot corresponding to candidates.   But candidates cannot be considered "goods" or "services" under the Lanham Act.   Even if the Thirteenth Amendment to the U.S. Constitution were not implicated, federal and state election law prohibiting the purchasing of votes would be.

[99] *FAIR*, 527 F.3d at 1053.

Trademark rights and protections against unfair competition exist to protect commercial goodwill and prevent likelihood of consumer confusion. Applying a party name or symbol on a general election ballot to a candidate who has won the party nomination pursuant to a process mandated by state law cannot be a use in commerce, in connection with goods and services, as required by the Lanham Act. The State Defendants are entitled to judgment as a matter of law.

B. *The Parties Cannot Prevail Because They Consent to the Use of Their Mark on the Ballot.*

Even if the Court believes that the changes made in SB54 implicate the Political Parties' alleged trademark rights, and that the Eleventh Amendment does not immunize them, the State Defendants are still entitled to judgment on the pleadings because SB54 makes the use of political parties' names and symbols on a ballot conditioned on the parties' consent. By providing the option for parties to be "Registered Political Parties" through a nomination/petition system or "Qualified Political Parties" through a nomination/convention system, SB54 only allows use of a political party's name and symbol if they permit such use. Because SB54 requires each party to choose which election "path" it wishes to follow, and because each party's symbol is only used if the party chooses a path that provides use of the symbol, any "use" is done with express party consent, and the Political Parties' trademark claims fail.

The Political Parties cannot prevail on trademark infringement if they consent to the trademark's use by the defendant.[100] As written, SB54 first requires a candidate seeking a registered party's nomination as a candidate for elective office on the November ballot to

---

[100] *Triple-I Corp. v. Hudson Assocs. Consulting, Inc.*, 713 F. Supp. 2d 1267, 1281 (D. Kan. 2010) (noting that one of the elements of a trademark infringement is "defendant used the mark in commerce without consent") (citing *FAIR*, 527 F.3d at 1050; *Universal Money Ctrs., Inc. v. AT&T Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994)).

designate which party, if any, on their declaration of candidacy.[101]  To avoid a possibility of duplicitous behavior or confusion on the part of the voter, the law also mandates that no candidate may appear on the ballot as the candidate of more than one political party.[102]  If a candidate has filed for a partisan office, the filing officer is required by law to provide a certified copy of the declaration of candidacy to the chair of the county or state political party of which the candidate is a member.[103]  If the leaders of the party from which the candidate is seeking a nomination have an objection to a candidate's designation of party, Utah law provides that they may file an objection to the candidate within five days. [104]

Additionally, to qualify to run as a partisan candidate through the petition process, SB54 requires that a candidate acquired "qualified" signatures.  Those signatures must be from registered voters affiliated with the party for which the candidate is seeking the nomination.[105] In other words, for a candidate to be placed on the ballot with the marks and symbols of the party, (1) the candidate must publicly seek that party endorsement, (2) voters affiliated with that party must sign the petition seeking the candidate's placement on the ballot, and (3) the party leaders have the opportunity to object to the candidate.  These provisions of the law, and the anticipated conduct of all relevant players in an election contest, demonstrates that the marks will be used on the ballot with consent.

---

[101] S.B. 54 § 11(1)(c) (codified at Utah Code § 20A-9-201(c)).
[102] Utah Code § 20A-9-201(2)(a)(ii).
[103] Utah Code § 20A-9-201(3)(c)(vi).  If a candidate is running for the nomination for a QPP, the Lieutenant Governor must post the candidate's intent to gather signatures to the Lieutenant Governor's website. S.B. 54 § 17(9)(e) (codified at Utah Code § 20A-9-408(9)(e)).
[104] Utah Code § 20A-9-202(5)(a).
[105] S.B. 54 § 13(2)(a)(ii) (codified at Utah Code § 20A-9-403(2)(a)(ii)).

Utah law requires party consent before its name or symbol is used with a candidate in a general election.   In general elections, section 20A-6-301(1)(a)(ii) ensures that no symbols, markings, or other descriptions of a political party or group except for a registered political party "that has chosen to nominate its candidates" may be used on a paper ballot.[106]  If a party chooses to be a registered political party, and complies with the provision of SB54, then the party symbols and names will be used with the candidates that win the selection processes the party has chosen.[107]   A party who chooses not to follow the RPP or QPP procedures need not worry about the unauthorized use of its name or mark on a ballot—such use is prohibited.[108]

The Republican Party admits that where a registered political party complies with the law, that their candidates are assigned on the ballot accordingly.[109]  They also acknowledge that when the procedures are not followed, that the candidates be placed on the ballot as "unaffiliated."[110] This, then, is no different from previous elections, where parties have provided marks, symbols, and "party circles" for printing on the ballot.   In fact, the Utah Republican Party used a November 2014 ballot as a specimen in support of its federal trademark application.[111]   That means the Utah Republican Party has asserted to the U.S. Patent and Trademark Office that it believes the 2014 ballot is an example of the Utah Republican Party's use of the Utah

---

[106] S.B. 54 §§ 5(1)(a)(ii), 15(5)  (codified at Utah Code §§ 20A-6-301(1)(a)(ii), 20A-9-406(5)).
[107] *Id.*
[108] S.B. 54 § 5(1)(g), (codified at Utah Code § 20A-6-301(1)(g)).
[109] (Republican Party's Compl. (doc. 2) at ¶ 64.)
[110] (*Id.* at ¶¶ 65-66).
[111] *See* Specimen of Use, USPTO Trademark Application Serial No. 86/524,823 (attached hereto as Exhibit B, *available at*
http://tsdr.uspto.gov/documentviewer?caseId=sn86524823&docId=SPE20150207092333

Republican Party's mark.[112]  The specimen demonstrates the Utah Republican Party's consent to use their names and symbols on a ballot.  Though SB54 may attach additional strings to use on future ballots, they are strings a party is free to accept or reject.

   C. *The Political Parties Wrongly Conflate Their First Amendment and Lanham Act Rights.*

   When a party chooses not to comply with SB54, their candidates are listed as unaffiliated, and no name, symbol, or circle is affixed to those candidates.  Thus, the Utah Republican Party has argued, SB54 creates an "unconstitutional choice," between agreeing to a process they believe is unconstitutional or losing their status as a party on the ballot.[113]  While the "unconstitutional choice" doctrine may be an issue regarding the Political Parties' associational rights, it is by no means a doctrine that implicates Lanham Act protections.  If the Political Parties agree to a primary process in accordance with SB54, then the candidate who wins the primary will be associated with the registered political party and its circle.  If the Political Parties choose not to engage in such a process, then no symbols will be used.  Any use of the Political Parties' names, symbols, or circles is dependent on the election of the party, and SB54's

---

[112] Lanham Act § 1(a)(1), 15 U.S.C. § 1051; *see Application of Bose Corp.*, 546 F.2d 893, 897 (C.C.P.A. 1976) ("An important function of specimens in a trademark application is, manifestly, to enable the PTO to verify the statements made in the application regarding trademark use.  In this regard, the manner in which an applicant has employed the asserted mark, as evidenced by the specimens of record, must be carefully considered in determining whether the asserted mark has been used as a trademark with respect to the goods named in the application." (citations omitted)); *see also* Trademark Manual of Examining Procedure § 1301.04(f) (2015) ("To be acceptable, a service-mark specimen must show the mark sought to be registered used in a manner that demonstrates a direct association between the mark and the services.").  The State Defendants disagree with the Utah Republican Party that a ballot is a sufficient specimen to show that there is some association with the mark and any services provided by the Utah Republican Party.  Nevertheless, the Utah Republican Party's choice to submit such a specimen is highly relevant to demonstrate that the party is, in fact, consenting to the use of their name and circle on a ballot.

[113] (*See, e.g.*, Pl.'s Am. Mot for Prelim. Inj. (doc. 13) at 18–19.)

*restriction* of the use of names and symbols to registered political parties cannot constitute trademark infringement—no marks are being "used" at all, in either a technical or actual sense. The Political Parties cannot base an infringement claim on a use they have either voluntarily submitted to or voluntarily withdrawn from, and thus the claim must be dismissed.

### CONCLUSION

*Quite simply, trademark law does not lie in the First Amendment associational rights implicated in this matter. Trademark law is designed to protect the proprietary rights of private parties from improper commercial uses. This case does not involve the propriety rights of the political parties, or [the State]'s commercial use of any trademark.*[114]

These three sentences from the trial court's ruling in the *Washington State Republican Party* case perfectly summarize the deficiencies in the Political Parties' trademark claims in this case. As recognized by the U.S. Supreme Court, the Tenth Circuit, and countless lower courts, a law setting parameters for the use of a political party's name on a ballot is not a commercial use in connection with goods or service, triggering liability for unfair competition. The Eleventh Amendment shields the State, and its officials, from liability. And the Political Parties have consented, and could continue to consent, to the use of their marks on ballots if SB54 were implemented.

The First Amendment rights that the parties may enjoy require serious consideration by the Court. But the parties' trademark claims do not. Accordingly, the State Defendants respectfully request that the Court grant their motion, and enter judgment in their favor on the Political Parties' trademark claims.

---

[114] *Wash. State Repub. Party v. Wash. State Grange*, No. C05-0927-JCC, 2011 WL 92032, at * 7 (W.D. Wash. Jan. 11, 2011) (ord. not selected for publication), *aff'd* 676 F.3d 784, 795 (9th Cir. 2012).

DATED:  March 20, 2015.

OFFICE OF THE UTAH ATTORNEY GENERAL


/s/ Kyle J. Kaiser
KYLE J. KAISER
DAVID N. WOLF
Assistant Utah Attorneys General
PARKER DOUGLAS
Utah Federal Solicitor
*Counsel for Defendants*