IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UTAH REPUBLICAN PARTY,<br><br>Plaintiff,<br><br>CONSTITUTION PARTY OF UTAH, a registered political party of Utah,<br><br>Plaintiff and Intervenor,<br>v.<br><br>GARY R. HERBERT, in his Official Capacity as Governor of Utah, and SPENCER J. COX, in his Official Capacity as Lieutenant Governor of Utah,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING STATE DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS ON TRADEMARK ISSUES**<br><br><br>Case No. 2:14-cv-00876-DN-DBP<br><br>District Judge David Nuffer<br>Magistrate Judge Dustin B. Pead |

## BACKGROUND

Plaintiff Utah Republican Party ("URP") brought suit against Governor Herbert and Lieutenant Governor Cox (the "State Defendants") over Senate Bill 54 ("SB54") which was passed during the 2014 Utah legislative session. URP argues that SB54 is unconstitutional and violates URP's trademark rights. A ruling on preliminary injunction was issued previously which addressed the constitutionality questions.[1] The instant memorandum decision and order addresses trademark issues.

In its Complaint, URP seeks, with respect to trademark issues:

A declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring SB54 violates the Party's rights to control and direct the use of its name, title, emblems, and endorsements, and prevent the unlawful use of its name, title, emblems, and endorsements in a way that is likely to cause confusion, mistake

---

[1] Memorandum Decision and Order Denying Preliminary Injunction, docket no. 170, entered September 24, 2015.

and deceive Utahns concerning the affiliation, connection, sponsorship or association with the Party of the person receiving the Party's nomination under SB54, or contribute to the false designation of the Party's endorsement under SB54, in a way that harms the Party and dilutes its message;

A permanent injunction enjoining enforcement and implementation of SB54;

A judgment awarding Plaintiff damages and costs of suit, including reasonable attorneys' fees under 15 U.S.C. § 1117 and 42 U.S.C. § 1988; and

Such other and further relief to which Plaintiff may be entitled.[2]

URP alleges that "the State through SB54 has sought to misallocate the name, title, emblems, and endorsements of the [URP], including the [URP] Mark, and use them in a way in its administration of the primary and general elections in Utah, and in the actions that it seeks to prohibit by SB54, that falsely designates the Party's endorsement of nominees, and which is likely to cause confusion, mistake and deceive Utahns . . . ."[3]

The Constitution Party of Utah ("CPU") intervened in the lawsuit and also filed a complaint seeking an injunction,[4] damages,[5] and attorney's fees under the Lanham Act[6] for alleged infringement of the CPU "trademark, good will, and name . . . ."[7]

After filing answers[8] denying the trademark infringement allegations, the State Defendants filed their motion for partial judgment on the pleadings under Rule 12(c)[9] ("Motion").[10] The State Defendants argue that SB54 does not infringe URP's or CPU's marks,

---

[2] [URP] Complaint ("URP Complaint") Prayer for Relief ¶¶ 2-5, docket no. 2, filed December 1, 2014.

[3] *Id.* ¶ 121.

[4] [CPU] Amended Complaint ("CPU Complaint") ¶¶ 45 and 47, docket no. 30, filed January 30, 2015.

[5] *Id.* ¶ 49.

[6] *Id.*

[7] *Id.* ¶ 43.

[8] Defendants' Answer to the Utah Republican Party's Complaint, docket no. 31, filed February 2, 2015; Defendants' Answer to the Utah Constitution Party's Amended Complaint, docket no. 35, filed February 10, 2015.

[9] Fed. R. Civ. P. 12(c).

[10] State Defendants' Motion for Partial Judgment on the Pleadings and Memorandum of Law in Support ("Motion"), docket no. 64, filed March 20, 2015.

and they ask that the trademark claims be dismissed with prejudice.[11] For the reasons set forth

below, the State Defendants' Motion is GRANTED.

## TABLE OF CONTENTS

BACKGROUND ..................................................................................................................... 1
Standard for a Rule 12(c) Motion for Judgment on the Pleadings ................................................. 3
DISCUSSION ........................................................................................................................ 4
    1.    Eleventh Amendment..................................................................................................... 5
          Congress Has Not Abrogated Sovereign Immunity under the Lanham Act........... 6
          The State of Utah Has Not Expressly Waived Its Sovereign Immunity................. 6
          The State Defendants May Be Sued for Injunctive Relief under the Ex parte
              Young Exception ................................................................................................... 8
    2.    The Political Parties Have Failed to Show That the State Uses the Political
          Parties' Trademarks "in Commerce" or that the State Created a "*Competing* Good
          or Service" ...................................................................................................... 10
    3.    The Political Parties' Marks Would Be Used Only With Consent...................... 14
CONCLUSION..................................................................................................................... 16
ORDER ................................................................................................................................ 17

## STANDARD FOR A RULE 12(C) MOTION FOR
## JUDGMENT ON THE PLEADINGS

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil

Procedure is evaluated by the same standard as a Rule 12(b)(6) motion to dismiss for failure to

state a claim.[12] The factual details supporting a claim must be great enough to make the claim

plausible, rather than merely possible; i.e., "enough to raise a right to relief above the speculative

level. . . ."[13] It must be reasonable for a court to draw the inference that the defendant is liable,

based on the facts stated.[14] Recitations of elements of a claim and conclusory statements lack

---

[11] Motion at iii.

[12] *See, e.g.*, *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013); Fed. R. Civ. P. 12(c); Fed. R. Civ. P.
12(b)(6).

[13] *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007).

[14] *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

sufficient detail, and cannot trigger a court's assumption that all of the statements made in the pleading are true.[15]

## DISCUSSION

URP grounds its claims in federal law.[16] CPU refers to a state law trademark registration and "statutory and common law trademark infringement" as the basis of its trademark cause of action.[17] CPU, however, seeks damages and fees pursuant to federal law.[18] Because there is no difference between the standards applied to URP's and CPU's claims,[19] and because the Joint Memorandum in Opposition[20] does not argue that a different standard should apply, the trademark infringement claims at issue will be analyzed under federal law—specifically under the Lanham Act[21] and related case law.

The State Defendants argue that the trademark claims brought by URP and CPU (collectively "Political Parties") should be dismissed because: (1) the trademark claims are barred by the Eleventh Amendment and the doctrine of sovereign immunity; (2) the Political Parties' trademark claims fail to state a claim because the State Defendants have not "used" any of the Political Parties' alleged trademarks "in commerce" or "in connection with" any good or service; and (3) pursuant to the statutory scheme, the Political Parties consent to and permit the

---

[15] *Id.*

[16] URP Complaint ¶¶ 119-122 (citing 15 U.S.C. §§ 1116, 1117, and 1125).

[17] CPU Complaint ¶¶ 43, 46.

[18] *Id.* ¶ 49.

[19] *See, e.g.*, *Utah Lighthouse Ministry, Inc. v. Discovery Computing, Inc.*, 506 F.Supp.2d 889, 902 (D.Utah 2007) (granting summary judgment on unfair competition claims under Utah state law because defendants did not put plaintiff's logo into "commercial use" *under the meaning of the Lanham Act*).

[20] Plaintiffs' Joint Opposition to Defendants' Motion for Partial Judgment on the Pleadings ("Opposition"), docket no. 128, filed May 16, 2015.

[21] Lanham Act ("Lanham Trade-mark Act") ("Trademark Act of 1946"), 15 U.S.C. §§ 1051 to 1141n (2015).

State Defendants to use the Political Parties' names and symbols on a ballot.[22] Each of these arguments will be addressed in turn.

### 1. Eleventh Amendment

The Eleventh Amendment to the United States Constitution provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.[23]

Although a literal interpretation of the Eleventh Amendment bars "only federal jurisdiction over suits brought against one State by citizens of another State or foreign state, [the U.S. Supreme Court has] long recognized that the Eleventh Amendment" repudiates the concept that "the jurisdictional heads of Article III superseded the sovereign immunity that the States possessed before entering the Union."[24] In other words, a state[25] enjoys sovereign immunity from lawsuits brought against it by *anyone*. But there are certain, limited exceptions.

The U.S. Supreme Court has recognized "only two circumstances in which an individual may sue a State: First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment . . . . Second, a State may waive its sovereign immunity by consenting to suit."[26]

---

[22] Motion at iii.

[23] U.S. Const. amend. XI.

[24] *College Savings Bank v. Flor. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669 (1999).

[25] A "state," for purposes of the Eleventh Amendment, may include a state official in his official capacity. "Suits against individual officers may be barred by the Eleventh Amendment. The inquiry . . . is whether the state is actually the real party in interest." 13 Wright & Miller, Fed. Prac. & Proc. Juris. § 3524.2 (3d ed. 2015) (citing cases). If payment of judgment is to come from the state treasury, the action is "essentially one against the state" and is barred unless *Ex parte Young* applies. Here, suit is brought against Governor Herbert and Lieutenant Governor Cox in their official, not individual, capacity; hence, the suit is barred under the Eleventh Amendment because damages would be paid from the state treasury. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State."). However, as explained below, *Ex parte Young* applies because the Political Parties also seek prospective injunctive relief.

[26] *College Savings Bank*, 527 U.S. at 670.

### *Congress Has Not Abrogated Sovereign Immunity under the Lanham Act*

The State Defendants argue that the Political Parties' trademark claims are barred because Congress has not abrogated the State of Utah's immunity under the Eleventh Amendment.[27] The State Defendants are correct. *College Savings Bank* made clear that "the Trademark Remedy Clarification Act did not abrogate sovereign immunity for actions brought under the Lanham Act."[28] This means that the State of Utah "enjoys sovereign immunity with respect to . . . Lanham Act claims unless [the State of Utah] has waived its sovereign immunity."[29]

### *The State of Utah Has Not Expressly Waived Its Sovereign Immunity*

The State Defendants argue that the State of Utah has not expressly waived its sovereign immunity by consenting to suit. The State Defendants are correct. "After *College Savings Bank*, it is clear that any waiver of sovereign immunity by a state must be express and voluntary, and cannot be implied or constructive."[30] Under this "stringent" standard,[31] the Political Parties must show *express* or *unequivocal* waiver of immunity by the State of Utah with respect to Lanham Act claims. They fail.

Instead, the Political Parties point to a Utah law, the "Registration and Protection of Trademarks and Service Marks Act,"[32] and argue that the State has waived its immunity by stating in that Act that "any person is liable" for trademark infringement[33] and that aggrieved

---

[27] Motion at 5-7; State Defendants' Reply Memorandum in Support of Their Motion for Partial Judgment on the Pleadings ("Reply") at 1-5, docket no. 132, filed June 2, 2015.

[28] *State Contracting and Engineering Corp. v. State of Florida*, 258 F.3d 1329, 1335 (Fed. Cir. 2001).

[29] *Id.* at 1336.

[30] *Id.*

[31] *Id.*

[32] Utah Code § 70-3a-101 to 502.

[33] Opposition at 8 (citing Utah Code § 70-3a-402(1)).

parties may seek remedies "in any court of competent jurisdiction."[34] However, the Registration and Protection of Trademarks and Service Marks Act states that it "shall be interpreted to provide for the registration and protection of trademarks and service marks *in a manner substantially consistent with the federal system* of trademark registration and protection under the Trademark Act of 1946, 15 U.S.C. Sec. 1051, et seq."[35]

Because *College Savings Bank* unmistakably rejected Congress's attempt to subject states to suit under the Lanham Act and clearly held that waiver of immunity must be "express and voluntary, and cannot be implied or constructive,"[36] the Political Parties' argument fails. There is no indication that Utah has expressly and voluntarily waived its immunity by consenting to suit under the Lanham Act. Waiver may only be found "where stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction."[37] "A State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation."[38] "Nor does it consent to suit in federal court merely by stating its intention to 'sue and be sued,' or even by authorizing suits against it 'in any court of competent jurisdiction[.]'"[39] The Political Parties only point to general language that *College Savings Bank* has already held is insufficient to constitute waiver.

Accordingly, neither of the two recognized exceptions to sovereign immunity applies, and the Political Parties' claims are barred under the Eleventh Amendment.

---

[34] Opposition at 11 (citing Utah Code § 70-3a-404).

[35] Utah Code § 70-3a-102(1) (emphasis added).

[36] *State Contracting*, 258 F.3d at 1336.

[37] *College Savings Bank*, 527 U.S. at 678 (alteration in original).

[38] *Id.* at 676.

[39] *Id.* (internal quotation marks and citations omitted).

***The State Defendants May Be Sued for Injunctive Relief under the* Ex parte Young *Exception***

Even though the Political Parties' arguments fail to show a blanket exception to Eleventh Amendment immunity, the Political Parties argue that the *Ex parte Young* exception applies. The Political Parties argue that their trademark claims for injunctive relief survive under *Ex parte Young* because they are not suing the *State of Utah*, but rather they are suing "*state officials* in their official capacities" and "seeking *prospective, injunctive relief* for violations of federal law."[40] Such claims, the Political Parties argue, "are not barred by the Eleventh Amendment."[41] The Political Parties are correct that their claims for *prospective, injunctive relief* are not barred by the Eleventh Amendment under the *Ex parte Young* exception. However, as just discussed, *no monetary relief* may be awarded under such claims because of Eleventh Amendment immunity.

While it is true that claims for prospective injunctive relief may be advanced against state officials under the *Ex parte Young* exception, claims for "retroactive monetary relief" are barred.[42] Moreover, to pursue the claims for prospective injunctive relief, the state officer named in the suit "*must have some connection with the enforcement of the act*, or else [the plaintiff] is merely making him a party as a representative of the state, and thereby attempting to make the state a party."[43] In *Kitchen v. Herbert*,[44] the Tenth Circuit explained that a state official "need only have a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty" in order to have "some connection" to the enforcement of a challenged

---

[40] Opposition at 6 (emphasis added) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 102-03 (1984); *Edelman v. Jordan*, 415 U.S. 651, 666-67 (1974); *Ex Parte Young*, 209 U.S. 123, 156 (1908)).

[41] Opposition at 7.

[42] *Pennington Seed, Inc. v. Produce Exchange No. 299*, 457 F.3d 1334, 1341 (Fed. Cir. 2006) ("To analyze an *Ex parte Young* claim, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." (alteration in original, internal citations and quotation marks omitted)).

[43] *Ex parte Young*, 209 U.S. at 157 (emphasis added).

[44] *See Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014).

provision.[45] The Tenth Circuit in *Kitchen* held that Governor Herbert was subject to suit under *Ex parte Young* because he had a particular duty to enforce the law in question and a willingness to exercise that duty. The "particular duty" arose from the Utah Code, where "[t]he Governor is statutorily charged with 'supervis[ing] the official conduct of all executive and ministerial officers' and 'see[ing] that all offices are filled and the duties thereof performed.'"[46] Therefore, because he was "responsible for the general supervision of the administration by the local . . . officials" of the challenged provision,[47] the Governor was "properly made [a] defendant" under *Ex parte Young*.[48]

The URP and CPU Complaints state that Lieutenant Governor Cox is the chief election officer of Utah and is responsible for the enforcement of SB54, and that Governor Herbert is the supervisor of all official conduct of all executive and ministerial officers.[49] Under *Kitchen*, these allegations are enough to show that Governor Herbert and Lieutenant Governor Cox have "some connection" to the enforcement of the challenged provision of SB54, and a "particular duty" to enforce the law. Therefore, they are subject to suit under the *Ex parte Young* exception, but *only for prospective, injunctive relief*.

Even though the *Ex parte Young* exception to Eleventh Amendment sovereign immunity applies to subject the State Defendants to suit, all claims for *monetary relief* are barred. The only claims that survive are claims against the State Defendants for *prospective, injunctive relief* for alleged ongoing violations of federal law, specifically trademark infringement. But, as explained in more detail in the sections that follow, even those claims fail because the Political Parties have

---

[45] *Id.* at 1201.

[46] *Id.* at 1202 (quoting Utah Code § 67-1-1(1) & (2)).

[47] *Id.* at 1204.

[48] *Id.*

[49] *Id.* at 6-7 (quoting Utah Code § 67-1-1(1)).

failed to state a valid trademark infringement claim and because any use of the Political Parties'

marks on a general election ballot occurs only if the Political Parties consent to such use.

> **2.  The Political Parties Have Failed to Show That the State Uses the Political Parties' Trademarks "in Commerce" or that the State Created a "*Competing* Good or Service"**

Under 15 U.S.C. § 1125(a),[50] the owner of "any valid mark, registered or not,"[51] may sue

"any person" who:

> uses in commerce any word, term, name, symbol, or device, or any combination
> thereof, or any false designation of origin, false or misleading description of fact,
> or false or misleading representation of fact, which . . . is likely to cause
> confusion, or to cause mistake, or to deceive as to the affiliation, connection, or
> association of such person with another person, or as to the origin, sponsorship, or
> approval of his or her goods, services, or commercial activities by another person
> . . . .[52]

The elements required to prove trademark infringement under this section are: "(1) that plaintiff

has a protectable interest in the mark; (2) that the defendant has used 'an identical or similar

mark' in commerce; and (3) that the defendant's use is likely to confuse consumers."[53] The

"central question" in an infringement action "is whether the defendant's use of the plaintiff's

mark is likely to cause consumer confusion."[54]

Several types of confusion exist, including "direct confusion," "reverse confusion," and

"initial-interest confusion."[55] "The classic case of direct confusion occurs when '[c]ustomers

want to buy the [plaintiff's] product and because of the similarity of the marks, mistakenly buy

---

[50] Lanham Act, § 43(a).

[51] *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013).

[52] *Id.* (quoting 15 U.S.C. § 1125(a)).

[53] *Id.* (citations omitted).

[54] *Id.*

[55] *Id.* at 1238-39.

the [defendant's] product instead.'"[56] Reverse confusion occurs "'when the [defendant's]
advertising and promotion so swamps the [plaintiff's] reputation in the market' that 'customers
purchase the [plaintiff's] goods under the mistaken impression that they are getting the goods of
the [defendant].'"[57] "Initial-interest confusion 'results when a consumer seeks a particular
trademark holder's product and instead is lured to the product of a competitor by the
competitor's use of the same or similar mark.'"[58]

   As is evident from the discussion above, the Lanham Act was enacted to protect
trademarks and service marks from use "in commerce" by competitors in order to avoid
confusion among consumers. "To invoke the protections of the Lanham Act, a plaintiff must
show that the alleged infringer used the plaintiff's mark 'in connection with any goods or
services.'"[59] "The Lanham Act is intended to protect the ability of consumers to distinguish
among competing producers, not to prevent all unauthorized uses."[60] "[T]he defendant in a
trademark infringement and unfair competition case must use the mark in connection with the
goods or services of a competing producer, not merely to make a comment on the trademark
owner's goods or services."[61] "Unless there is a competing good or service labeled or associated
with the plaintiff's trademark, the concerns of the Lanham Act are not invoked."[62]

   In *Utah Lighthouse Ministry*, the Tenth Circuit addressed trademark infringement claims
brought by a plaintiff who felt that defendant's website violated the Lanham Act by referencing

---

[56] *Id.* at 1239 (quoting 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:10 at 23-70 (4th ed. 2013)) (alterations in original).

[57] *1-800 Contacts*, 722 F.3d at 1239 (quoting 4 McCarthy § 23:10 at 23-70 to -71) (alterations in original).

[58] *1-800 Contacts*, 722 F.3d at 1239 (quoting *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1238 (10th Cir. 2006)).

[59] *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1051-52 (10th Cir. 2008).

[60] *Id.* at 1052.

[61] *Id.* at 1053.

[62] *Id.* at 1054.

and critiquing plaintiff's website and plaintiff's trademark.[63] After reviewing the websites and

finding that defendant's website did not provide a competing good or service or use the

plaintiff's mark in connection with goods or services, the Tenth Circuit held that the defendant's

website was "overwhelmingly noncommercial" and denied plaintiff's trademark infringement

and unfair competition claims.[64]

Similarly, in *Washington State Republican Party v. Washington State Grange*,[65] a

political party argued that Washington State's primary election system violated the party's

trademark rights.[66] The Ninth Circuit rejected this argument, noting that the political party was

"required to show that the defendant—here, the State of Washington—uses the Party's registered

mark 'in connection with the sale, offering for sale, distribution, or advertising of any *goods or

services*.'"[67] "At a minimum," the Ninth Circuit wrote, "the plaintiff must show that the

defendant 'offers *competing* services to the public.'"[68] Because the political party could not

make these showings, the Ninth Circuit rejected the trademark infringement claims.

The conclusions reached in *Utah Lighthouse Ministry* and *Washington State Grange*

apply equally here. The Political Parties have not shown that the State, through SB54, uses the

Political Party's trademarks *in competition* with the Political Parties. Instead, the State uses the

Political Party's trademarks to provide a forum for the public to vote for candidates. The Political

Parties have not pleaded that the State has provided a *competing* good or service or that the

Political Parties' marks, names, titles, good will, or emblems will be used by the State in

---

[63] *Id.* at 1052.

[64] *Id.* at 1052-53.

[65] *Washington State Republican Party v. Washington State Grange*, 676 F.3d 784 (9th Cir. 2012).

[66] *Id.* at 795.

[67] *Id.* (emphasis in original).

[68] *Id.* (emphasis in original).

connection with goods or services at all. Nor have the Political Parties cited any law providing

for a cause of action for trademark infringement under circumstances similar to those presented

in this case. Thus, the Lanham Act protections are not triggered because the Political Parties fail

to show how "the defendant has used 'an identical or similar mark' *in commerce*;"[69] or that

"there is a *competing* good or service labeled or associated with the plaintiff's trademark[.]"[70]

      While URP and CPU allege that the State's use of the Political Parties' trademarks "is

likely to cause confusion"[71] among voters about who the Political Parties actually support, the

type of "confusion" alleged by the Political Parties here is much different than the "confusion"

prohibited by  15 U.S.C. § 1125(a). Whereas the Political Parties speak in terms of confusion

among *voters* or *Utahans in general*, cases analyzing the Lanham Act speak of confusion in

terms of "customers," "consumers," and "products" or "goods."[72] Therefore, the "confusion"

alleged in URP's and CPU's pleadings is not the same type of "confusion" envisioned under the

Lanham Act.

      As the State Defendants correctly note, *United We Stand*[73] does not present the same

situation that has been presented by the Political Parties. In *United We Stand*, the question was

whether a political organization could use a competing political organization's service mark in

its political activities.[74] The Second Circuit held that because trademarks and service marks of

---

[69] *1-800 Contacts*, 722 F.3d at 1238 (citation omitted) (emphasis added).

[70] *Utah Lighthouse Ministry*, 527 F.3d at 1054 (emphasis added).

[71] URP Complaint ¶ 119; CPU Complaint ¶ 44.

[72] *See, e.g.*, *1-800 Contacts*, 722 F.3d at 1238-39 (describing "confusion" in terms of consumers, customers, and purchasing of goods).

[73] *United We Stand America, Inc. v. United We Stand America New York, Inc.*, 128 F.3d 86 (2d Cir. 1997).

[74] *Id.* at 88-89.

non-profit and public service organizations are protected, the "use of the mark by competing organizations [must] be prohibited"[75]

The Political Parties argue that *United We Stand* supports their position and that "[c]ontrary to Defendants' suggestions, the Lanham Act extends to the unauthorized use of Plaintiffs' trademarks" because "[a] political organization that adopts a platform and endorses candidates under a trade name performs the valuable **service** of communicating to voters . . . ."[76] The Political Parties incorrectly focus on the "valuable service" language in *United We Stand*. The issue here is not whether the Political Parties provide a valuable service or are eligible to obtain a protectable mark under the Lanham Act; the State Defendants do not dispute that the Political Parties hold valid marks and provide valuable services to the public. Rather, the issue is whether the State, through SB54, provides a *competing* good or service *in commerce* that infringes on the Political Parties' trademarks. The Political Parties have not made any plausible allegation that the State does so, and therefore the Political Parties fail to state a claim because they fail to state an essential element of their trademark infringement claim.

### 3.   The Political Parties' Marks Would Be Used Only With Consent

Under SB54, a general election ballot may *not* contain "symbols, markings, or other descriptions of a political party or group, except for a registered political party that has chosen to nominate its candidates in accordance with Section 20A-9-403."[77] The State Defendants argue that because of this provision in SB54, a political party who chooses not to nominate its candidates in accordance with Section 20A-9-403 does not need to worry about unauthorized use of its marks because such use is prohibited. The Political Parties reject this argument, contending

---

[75] *Id.* at 89.

[76] Opposition at 12 (quoting *United We Stand America*, 128 F.3d at 90 (emphasis by Political Parties)).

[77] Utah Code § 20A-6-301. Section 20A-9-403 requires that candidates be nominated "by direct vote of the people."

that they have not *agreed* to the use of their marks, and therefore do not consent.[78] The Political Parties cite to an Eastern District of Missouri case and a treatise, and argue that they should not be "required to give up [their] trademark rights in order to gain ballot access."[79]

The Political Parties are incorrect for three reasons. First, the Political Parties concede that consent is a "viable defense" in a trademark action.[80] Second, consent occurs under SB54 when a political party chooses to designate itself as a Registered Political Party or a Qualified Political Party and follow the provisions of the law. A political party is not required to nominate its candidates by primary election.[81] If it does not nominate candidates by primary election, "no symbols, markings, or other descriptions of [the] political party or group" will be used on the general election ballot.[82] However, if the political party *does* follow the provisions of SB54, it gains the benefit of having its logo appear on the general election ballot next to the candidate who has also followed the procedures of SB54. This action manifests consent. Third, a political party does not "give up" its trademark rights "in order to gain ballot access" under SB54. A political party is still allowed to protect its logos, emblems, and other trademarks by following SB54. That is, it may still enjoin a *competing* political organization from using the party's trademarks in competition or to cause confusion. But, as described above, the State of Utah is not a competitor, so its use of the Political Parties' marks on a ballot would not trigger the protections set forth under the Lanham Act. The Political Parties cite to no case or other law establishing that such use is an infringement on the Political Parties' trademarks. Therefore,

---

[78] Opposition at 17.

[79] *Id.*

[80] *Id.* (citing *Ariel Preferred Retail Group, LLC v. CWCapital Asset Mgmt.*, 883 F.Supp.2d 797, 832 (E.D. Mo. 2012)).

[81] Utah Code § 20A-9-403 ("Nothing in this section shall affect a candidate's ability to qualify for a regular general election's ballot as an unaffiliated candidate . . . or to participate in a general election as a write-in candidate . . . .").

[82] Utah Code § 20A-6-301(1)(a)(ii).

because consent is a viable defense to a trademark claim, and because consent is established, the Political Parties' trademark infringement arguments fail to state a claim.

## CONCLUSION

Even though the *Ex parte Young* exception could apply to allow the suit to move forward against the State Defendants for prospective injunctive relief, the trademark claims fail because the Political Parties have failed to show that the State uses the Political Parties' trademarks "in commerce" or "in connection with competing goods and services" under the Lanham Act. Further, the State may only use the Political Parties' marks if the Political Parties have consented to the use of their marks under SB54. The Political Parties have therefore failed to state a claim for trademark infringement under 15 U.S.C. § 1125(a). Placement of a political party's name or mark on an election ballot pursuant to a state law is not the same as creating a "competing" good or service that would cause confusion among consumers or customers.

**ORDER**

IT IS HEREBY ORDERED that the State's Motion[83] is GRANTED. The Political

Parties' trademark infringement claims are hereby DISMISSED WITH PREJUDICE. Any relief

requested in the Political Parties' Complaints or in the URP's preliminary injunction motion

which is based on trademark infringement is DENIED.

IT IS FURTHER ORDERED that the hearing set October 29, 2015[84] is VACATED.

Dated October 22, 2015.

BY THE COURT:

David Nuffer
United States District Judge

---

[83] State Defendants' Motion for Partial Judgment on the Pleadings and Memorandum of Law in Support ("Motion"),
docket no. 64, filed March 20, 2015.

[84] Docket no. 172, filed October 9, 2015.