IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UTAH REPUBLICAN PARTY,<br><br>Plaintiff,<br><br>CONSTITUTION PARTY OF UTAH,<br><br>Plaintiff and Intervenor,<br><br>v.<br><br>GARY R. HERBERT, in his Official Capacity as Governor of Utah, and SPENCER J. COX, in his Official Capacity as Lieutenant Governor of Utah,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>**GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [162]**<br><br>**AND**<br><br>**GRANTING IN PART AND DENYING IN PART CONSTITUTION PARTY OF UTAH'S MOTION FOR PARTIAL SUMMARY JUDGMENT [163]**<br><br>Case No. 2:14-cv-00876-DN-DBP<br><br>District Judge David Nuffer<br>Magistrate Judge Dustin B. Pead |

This memorandum decision and order resolves two motions: (1) Defendants' ("State") Motion for Summary Judgment ("State Motion")[1] and (2) the Constitution Party of Utah's ("CPU") Motion for Partial Summary Judgment ("CPU Motion").[2]

The Utah Republican Party ("URP") filed a memorandum in opposition to the State Motion ("URP Opposition"),[3] as did the CPU ("CPU Opposition").[4] The State filed replies to each of those memoranda in opposition.[5]

---

[1] Defendants' Motion for Summary Judgment ("State Motion"), docket no. 162, filed September 21, 2015.

[2] Motion for Partial Summary Judgment and Memorandum in Support ("CPU Motion"), docket no. 163, filed September 21, 2015.

[3] Memorandum in Opposition to Defendants' Motion for Summary Judgment ("URP Opposition"), docket no. 176, filed October 9, 2015.

[4] Memorandum in Opposition to Defendants' Motion for Summary Judgment ("CPU Opposition"), docket no. 173, filed October 9, 2015.

The State filed a memorandum in opposition to the CPU Motion ("State Opposition").[6]

The CPU filed a reply ("CPU Reply") to the State Opposition.[7]

A hearing on these motions was held on October 27, 2015.[8]

For the reasons stated below, the State Motion is GRANTED IN PART and DENIED IN

PART, and the CPU Motion is GRANTED IN PART and DENIED IN PART. In addition,

because "notice and a reasonable time to respond" was given[9] as required, this order "grant[s]

summary judgment for . . . nonmovant"[10] URP.

## CONTENTS

UNDISPUTED MATERIAL FACTS ............................................................................... 3
    Registered Political Parties ("RPP") ........................................................... 4
    Qualified Political Parties ("QPP") ............................................................. 6
    SB207 ........................................................................................................... 7
    Party Membership ........................................................................................ 7
    Party Certification ........................................................................................ 8
    State's Interest or Purpose in Passing SB54 ............................................... 9
SUMMARY JUDGMENT STANDARD ....................................................................... 9
DISCUSSION OF MOTIONS ........................................................................................ 9
    THE STATE MOTION ................................................................................. 10
        The Unaffiliated Voter Provision is Unconstitutional As Applied ...................... 10
            Evidence is Sufficient to Consider an As-Applied Challenge to the
                Unaffiliated Voter Provision ........................................................ 11
            Forcing a Political Party to Allow Unaffiliated Voters in Its Primary
                Election Is a "Severe Burden" ..................................................... 14
            The Unaffiliated Voter Provision in SB54 Is a Severe Burden and Must Be
                Struck Down Unless There Is a Compelling State Interest........... 23
            The State Has Not Shown a Compelling State Interest for the Unaffiliated
                Voter Provision .......................................................................... 26

---

[5] Defendants' Reply to the [CPU Opposition] ("Reply to CPU"), docket no. 187, filed October 19, 2015; Defendants' Reply to the [URP Opposition] ("Reply to URP"), docket no. 194, filed October 20, 2015.

[6] Defendants' Memorandum in Opposition to the [CPU Motion] ("State Opposition"), docket no. 175, filed October 9, 2015.

[7] Reply Memorandum in Support of [CPU Motion] ("CPU Reply"), docket no. 188, filed October 19, 2015.

[8] Minute Entry, docket no. 202, entered October 27, 2015.

[9] See id. (providing notice); Notice of No Response, docket no. 205, filed October 29, 2015 (providing notice of no opposition).

[10] Fed. R. Civ. P. 56(f).

The State Is Not Entitled to Summary Judgment as to the Unaffiliated
Voter Provision ...................................................................... 29
The Facial Challenge to SB54 Fails........................................................ 30
The State Motion is Granted in Part and Denied in Part...................... 32
THE CPU MOTION ................................................................................... 32
The Unaffiliated Voter Provision is Unconstitutional ........................... 33
The Signature Gathering Provision is Constitutional after the Unaffiliated
Voter Provision is Stricken .................................................... 33
The CPU Motion is Granted in Part and Denied in Part........................ 34
UTAH CODE § 20A-9-406(1)(a) REPLACES THE FUNCTION OF THE
UNAFFILIATED VOTER PROVISION ............................................. 35
REMAINING CLAIMS............................................................................... 37
RULE 56(F) GRANT OF SUMMARY JUDGMENT FOR URP.............................. 37
CONCLUSION.................................................................................................... 38
ORDER ............................................................................................................... 39

## UNDISPUTED MATERIAL FACTS[11]

1.      Senate Bill 54 ("SB54") was enacted by the Utah State Legislature in the 2014

General Session.[12]

2.      SB54 modified the Utah Election Code as it relates to the nomination of

candidates, primary and general elections, and ballots.[13]

3.      The sections of the Utah Code that are affected by SB54 include: 20A-1-102,

20A-1-501, 20A-5-101, 20A-6-301 through 305, 20A-9-101, 20A-9-202, 20A-9-403, and 20A-

9-701.[14]

---

[11] These facts are derived from the State Motion (labeled as "State Fact no. __"); the CPU Opposition (labeled as
"CPU Fact no. __"); the Reply to CPU; the URP Opposition (labeled as "URP Fact no. __"); the Reply to URP; the
CPU Motion (labeled as "CPU MPSJ Fact no. __"); the State Opposition; and the CPU Reply. An initial email was
sent to the parties on October 24, 2015 outlining the undisputed facts as a result of the briefing. The email included a
copy of "Proposed Undisputed Facts," which was discussed at the summary judgment hearing on October 27, 2015.

Because there was significant overlap between the motions, duplicate facts have been deleted. However, efforts have
been made to cross-reference omitted facts. The parties did not object at the October 27, 2015 hearing to the
suggestion of having a single set of undisputed facts for both motions (the State Motion and the CPU Motion).

[12] State Fact no. 1 (opening section) (citing Senate Bill 54, 2014 Gen. Sess., attached as Exhibit 1 to the Republican
Party's Amended Motion for Preliminary Injunction ("SB54"), docket no. 13-1, filed January 5, 2015); URP Fact
no. 32.

[13] State Fact no. 1 (opening section) (citing SB54); URP Fact no. 32.

[14] State Fact no. 1 (opening section) (citing SB54).

**Registered Political Parties ("RPP")**

4.      If an organization of registered voters wishes to "place the names of candidates representing that organization upon the primary and regular general election ballots under the common organization name," that organization must become a "registered political party" ("RPP") under the Utah Election Code.[15]

5.      Pursuant to Utah Code title 20A, chapter 8, an RPP is an organization of voters that: participated in the last regular general election and in at least one of the last two regular general elections, polled a total vote for any of its candidates for any office equal to 2% or more of the total votes cast for all candidates for the United States House of Representatives in the same regular general election; or has complied with the petition and organizing procedures of Utah Code title 20A, chapter 8.[16]

6.      To qualify to nominate candidates for an upcoming election, an RPP must comply with Utah Code Section 20-9-403. Section 20-9-403 requires an RPP to "either declare [its] intent to participate in the next primary election, or declare that the [RPP] chooses not to have the names of its candidates for elected office featured on the ballot at the next general election." This is done by filing a statement with the Lt. Governor no later than 5 p.m. on November 15 of the preceding odd-numbered year.[17]

---

[15] Utah Code § 20A-8-102(a). All citations to the Utah Code refer to the 2015 version unless noted otherwise.

[16] State Fact no. 1 (RPP section) (citing Utah Code § 20A-8-101(4)).

[17] State Fact no. 2 (RPP section) (citing Utah Code § 20A-9-403(2)(a)(i) and (2)(b)); URP Fact no. 34 (citing Deposition of Mark Thomas ("Thomas Depo.") 100:15 – 103:16, attached as Exhibit C to Defendants' Brief in Opposition to Plaintiff's Amended Motion for Preliminary Injunction, docket no. 69-3, filed April 1, 2015).

7.      If an RPP chooses to participate in the election nomination process, it must also identify one or more registered parties whose members may vote for its candidates and whether or not unaffiliated voters may vote for their candidates.[18]

8.      A candidate for elective office seeking the nomination of an RPP may gain access to that party's primary ballot by demonstrating they have a reasonable amount of party voters' support by completing a nomination petition process and obtaining certification.[19]

9.      Only party members, and those registered voters a party permits, are allowed to sign a nomination petition.[20]

10.      If an RPP chooses to have the State feature the names of its candidates for elective office with the party's affiliation on the ballot at a regular general election, then the RPP must comply with the requirements of section 20A-9-403 of the Utah Election Code and "nominate its candidates for elective office in the manner prescribed in [that] section."[21]

11.      The statute provides, in pertinent part, that "candidates . . . receiving the highest number of votes cast for each office at the regular primary election are nominated by their registered political party for that office."[22]

12.      The Utah Election Code allows the names of the RPP's candidates for elective office to be featured with party affiliation on the ballot at a regular general election.[23]

---

[18] State Fact no. 3 (RPP section) (citing Utah Code § 20A-9-403(2)(a)(ii)).

[19] State Fact no. 7 (RPP section) (citing Utah Code §§ 20A-9-403(3)(b)-(4)(a)(i) and -405).

[20] State Fact no. 8 (RPP section) (citing Senate Bill 54 (2014) Frequently Asked Questions at 6 ¶ 2.8, attached as Exhibit E to Defendants' Brief in Opposition to Plaintiff's Amended Motion for Preliminary Injunction, docket no. 69-5, filed April 1, 2015).

[21] State Fact no. 9 (RPP section) (citing Utah Code § 20A-9-403(1)(b)); URP Fact no. 35.

[22] State Fact no. 10 (RPP section) (citing Utah Code § 20A-9-403(5)(a)).

[23] State Fact no. 11 (RPP section) (citing Utah Code §§ 20A-9-403(1)(b) and -406(5)).

13.     The candidate who receives the most votes in the party's primary election is listed on the general election ballot as the party's nominee.[24]

### Qualified Political Parties ("QPP")

14.     A QPP is an RPP that: a) allows voters who have not registered with a political party ("unaffiliated voters") to vote for their party's candidates in a primary election; b) permits a delegate of its party to vote on a candidate's nomination in the party's convention remotely, or provides a procedure for designating an alternative delegate; c) does not hold the party's convention before April 1 of an even year; and d) permits members of its own party to seek nomination by either or both of the following methods: 1) seeking nomination through the party's convention process or 2) collecting the requisite number of signatures on a nominating petition.[25]

15.     Under the QPP provisions, there are two alternative tracks for a person to become a candidate for placement on the primary ballot: 1) the convention nomination track; and 2) the signature gathering nomination track. Under both of those tracks the statute limits candidates to members of the party.[26]

16.     On the convention nomination track, the statute sets forth the "requirements for a member of a qualified political party who is seeking the nomination of a qualified political party." The remaining provisions of that section refer specifically to "a member of a qualified political party."[27]

---

[24] State Fact no. 12 (RPP section) (citing Utah Code § 20A-6-301(2)).

[25] State Fact no. 1 (QPP section) (citing Utah Code § 20A-9-101(12)(a)-(d)).

[26] State Fact no. 2 (QPP section) (citing Utah Code §§ 20A-9-201, -407(1), -408(1)).

[27] State Fact no. 3 (QPP section) (citing Utah Code § 20A-9-407).

17.     The signature gathering nomination track for the QPP is similarly limited to members of the party and those individuals the party permits to participate.[28]

18.     SB54 requires that parties who certify their intent to participate in the upcoming election as a QPP allow unaffiliated voters to participate in their primary election.[29]

19.     The State intends to enforce the "unaffiliated voters" provision of the QPP.[30]

20.     Utah Code § 20A-9-408, as amended by SB54, requires that a candidate for statewide office, who chooses to force a contested primary for a QPP, must obtain the signatures of 28,000 registered voters. Similar signature requirements are required for other offices.[31]

21.     Under SB54, a political party may follow either the "RPP path"[32] or the "QPP path"[33] to place candidates on a ballot.

## SB207

22.     In the 2015 General Session, the Utah State Legislature passed Senate Bill 207, which clarifies that candidates of an RPP must be members of the RPP unless the RPP's bylaws permit otherwise.[34]

## Party Membership

23.     Membership in the Utah Republican Party "is open to any resident of the State of Utah who registers to vote as a Republican and complies with the Utah Republican Party

---

[28] State Fact no. 4 (QPP section) (citing Utah Code § 20A-9-408).

[29] URP Fact no. 40 (citing Utah Code § 20A-9-101(12)(a)); CPU MPSJ Fact no. 2.

[30] URP Fact no. 42 (citing Thomas Depo. 178:23 – 181:1, 181:17 – 182:3).

[31] CPU MPSJ Fact no. 3 (citing Utah Code § 20A-9-408).

[32] State Fact no. 2 (opening section) (citing Utah Code § 20A-9-403).

[33] State Fact no. 2 (opening section) (citing Utah Code § 20A-9-406).

[34] State Fact no. 6 (RPP section) (citing Senate Bill 207 Enrolled Copy, l. 618-632, 2015 Gen. Sess., attached as Exhibit G to Defendants' Brief in Opposition to Plaintiff's Amended Motion for Preliminary Injunction, docket no. 69-7, filed April 1, 2015; Utah Code § 20A-9-201; Utah Code § 20A-9-403(8)); URP Fact no. 33.

Constitution and Bylaws, and membership may be further set forth in the Utah Republican Party Bylaws."[35]

24.     To be a member of the Constitution Party of Utah, in good standing, a person must 1) "[d]eclare agreement with principles set forth in the platform of the Constitution Party of Utah;" and 2) "[d]eclare membership by voter registration in the party" and be "a resident of Utah."[36]

25.     There are 610,654 unaffiliated registered voters in Utah.[37]

26.     There are about 640,000 registered Republicans in Utah.  By designating itself as a QPP, the URP's primary will allow almost an equal number of unaffiliated voters to the number of registered Republicans in the State.[38]

27.     There are 4,183 members of the CPU in Utah.[39] By designating itself as a QPP, it is possible that CPU's membership could unanimously reject a candidate and yet that candidate could still appear on the ballot.[40]

28.     The Parties, not the State, determine the requirements for party membership.[41]

### Party Certification

29.     On July 7, 2015, the Constitution Party of Utah ("CPU") certified to the Lieutenant Governor its intent to become a QPP as defined in SB54.[42]

---

[35] State Fact no. 5 (SB207 section); URP Fact no. 6; URP Constitution (2015) Art. I § C, attached as Exhibit 1 to URP Opposition, docket no. 177-1, filed October 10, 2015.

[36] State Fact no. 6 (SB207 section) (citing CPU Constitution and Bylaws Art. IV (A) and (B), attached as Exhibit A to Amended Complaint, docket no. 30-1, filed January 30, 2015).

[37] URP Fact no. 40 (citing Utah Code § 20A-9-101(12)(a); Thomas Depo. 214:13 – 215:13).

[38] URP Fact no. 40 (citing Thomas Depo. 214:13 – 215:13).

[39] CPU MPSJ Fact no. 1 (citing Thomas Depo. 228:18-20).

[40] CPU Fact no. 1 (citing Thomas Depo. 228:16 – 233:19).

[41] State Fact no. 7 (SB207 section) (citing Utah Code § 20A-8-101(5)).

30.     On August 17, 2015, the Utah Republican Party certified to the Lieutenant Governor its intent to nominate candidates in 2016 in accordance with Utah Code § 20A-9-406, which sets forth the requirements and exemptions for QPPs.[43]

### State's Interest or Purpose in Passing SB54

31.     Lawmakers stated that one of their purposes in passing SB54 was to open party primaries, making nominees "more representative" of the entire State.[44]

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[45] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[46] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[47] The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[48]

### DISCUSSION OF MOTIONS

The State Motion will be discussed first, then the CPU Motion will be addressed.

---

[42] State Fact no. 3 (opening section) (citing correspondence from C. Simonsen to M. Thomas, dated July 7, 2015, attached as Exhibit A to State Motion, docket no. 162-1, filed September 21, 2015); CPU MPSJ Fact no. 4.

[43] State Fact no. 4 (opening section) (citing correspondence from J. Evans to Lt. Gov. Cox, dated August 17, 2015, attached as Exhibit B to State Motion, docket no. 162-2, filed September 21, 2015); URP Fact no. 48.

[44] URP Fact no. 54 (citing audio file of floor debate in the House, day 37 of 2014 Gen. Sess. at approx.. 2:02:43 (statement of Rep. McCay)).

[45] Fed. R. Civ. P. 56(a).

[46] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[47] *Id.*

[48] *Id.* at 670-71.

## THE STATE MOTION

The State Motion limits its argument to "1) the Constitution Party's facial challenge; and 2) the claimed burden of requiring a QPP to allow unaffiliated voters to participate in the Parties' primaries."[49] The State argues that Utah Code § 20A-9-101(12)(a), the provision in SB54 that requires QPPs to allow unaffiliated voters to vote in the QPP's primary election ("Unaffiliated Voter Provision"), is not a "severe burden;"[50] and argues that CPU's facial challenge to SB54 fails.[51] The State is incorrect as to its arguments on the Unaffiliated Voter Provision, but correct as to the facial challenge. Each of these arguments will be addressed in turn.

### The Unaffiliated Voter Provision is Unconstitutional As Applied[52]

An "as-applied challenge tests the application of [a] restriction to the facts of a plaintiff's concrete case."[53] Both the URP and the CPU (the "Parties") have pleaded that SB54 is unconstitutional as applied.[54] The Parties assert that several provisions of SB54 are unconstitutional,[55] but the State has moved for summary judgment only with regard to the requirement under SB54 that QPPs must allow unaffiliated voters to vote in the QPP's primary election ("Unaffiliated Voter Provision").[56]

It is undisputed that the Parties have chosen to become QPPs. Therefore, according to the facts of their concrete case, they must allow unaffiliated voters in their primary election pursuant

---

[49] State Motion at 1 (citation omitted).

[50] *Id.*

[51] Only the CPU raised a facial challenge to SB54; the URP did not. *See* [URP] Complaint, docket no. 2, filed December 1, 2014; [CPU] Amended Complaint ¶¶ 36 (a), (c), (e), (g), (i), docket no. 30, filed January 30, 2015.

[52] Utah Code § 20A-9-101(12)(a).

[53] *Colo. Right to Life Comm. v. Coffman*, 498 F.3d 1137 (10th Cir. 2007).

[54] [URP] Complaint ¶ 110; [CPU] Amended Complaint ¶ 36.

[55] Those arguments are addressed at the end of this memorandum decision and order.

[56] Utah Code § 20A-9-101(12)(a).

to the Unaffiliated Voter Provision.[57] This is unconstitutional, according to the Parties, because it forces them to associate with those whom they choose not to associate. The State disagrees, moving for summary judgment that the Parties easily could have chosen to become RPPs and avoid the forced association with unaffiliated voters. The State is incorrect.

"To assess the constitutionality of a state election law," the U.S. Supreme Court has held, "we first examine whether it burdens rights protected by the First and Fourteenth Amendments."[58] "Election regulations that impose a *severe burden* on associational rights are subject to strict scrutiny, and [they are upheld] only if they are 'narrowly tailored to serve a compelling state interest.'"[59] Before discussing what a "severe burden" is, or whether there is a "severe burden" imposed by SB54, the State's argument that the URP and CPU have not presented sufficient evidence for an as-applied must be addressed.

### *Evidence is Sufficient to Consider an As-Applied Challenge to the Unaffiliated Voter Provision*

As a preliminary matter, the State argues that the as-applied challenges brought by URP and CPU are not supported by evidence.[60] The State contends that "[a]lthough the Parties claim that the statute's allowing unaffiliated voters to participate in a QPP's primary will severely burden their associational rights, they have not presented any evidence in support of their claim."[61] The State argues that "the Parties have not shown that unaffiliated voters will choose to vote in the Republican or Constitution Parties' primaries and, if so, in what numbers."[62] Therefore, the State argues, "the Parties have not presented 'concrete evidence' to demonstrate

---

[57] Utah Code § 20A-9-101(12)(a).

[58] *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 222 (1989).

[59] *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 451 (2008) (emphasis added).

[60] State Motion at 3.

[61] *Id.* at 4.

[62] *Id.*

what impact, if any, unaffiliated voters will have on the outcome of the Parties' primaries."[63] The

State also argues that CPU and URP have failed to show that "the presence of unaffiliated voters

in their primaries will change the Parties' message and dilute Party ideology."[64] The State notes

that "[t]he State of Utah has not yet conducted an election with the statute's provisions in

effect."[65] "Accordingly," the State claims, "the impact, if any, of the statute on the Parties is not

yet known, nor can it be discovered until after elections are conducted and evidence is

gathered."[66]

The State is incorrect. In *Miller v. Brown*,[67] the Fourth Circuit analyzed a question

identical to the one raised by the State here. The question, according to the Fourth Circuit, was

"whether Virginia's open primary law violates the plaintiffs' First Amendment rights to freely

associate, which presents a purely legal question."[68] The Fourth Circuit rejected the Virginia

State Board of Elections's argument that "too many uncertainties exist to decide this case now,"

even though it was still months before a candidate entered the race and the state-required open

primary took place.[69] The Fourth Circuit plainly acknowledged that while it was uncertain

exactly how the law would affect the upcoming election, it was clear that the law "causes the

plaintiffs to associate with Democrats during the candidate-selection process,"[70] an

"unquestionabl[e] . . . constitutional injury."[71] Therefore, the Fourth Circuit held the case was

---

[63] *Id.*

[64] *Id.*

[65] *Id.* at 5.

[66] *Id.*

[67] *Miller v. Brown*, 462 F.3d 312 (4th Cir. 2006).

[68] *Id.* at 319.

[69] *Id.*

[70] *Id.* at 318.

[71] *Id.* at 316.

"fit for judicial review despite th[e] uncertainty" of *precise* impact to the political party.[72] The

Fourth Circuit explained that its decision comported with *Babbitt*,[73] a case where the U.S.

Supreme Court "found the plaintiffs' challenge ripe even though they had not actually invoked

the statute's election procedures."[74] Citing *Babbitt*, the Fourth Circuit wrote:

> Challengers to election procedures often have been left without a remedy in
> regard to the most immediate election because the election is too far underway or
> actually consummated prior to judgment. Justiciability in such cases depends not
> so much on the fact of past injury but on the prospect of its occurrence in an
> impending or future election. There is value in adjudicating election challenges
> notwithstanding the lapse of a particular election because "[the] construction of
> the statute, an understanding of its operation, and possible constitutional limits on
> its application, will have the effect of simplifying future challenges, thus
> increasing the likelihood that timely filed cases can be adjudicated before an
> election is held."[75]

This persuasive reasoning applies directly to this case. Here, the State argues there are too

many uncertainties about SB54 and the effect of the Unaffiliated Voter Provision. The State

argues that an election must be held before it is known what precise harms the URP and CPU

will suffer from forced association. But even though an election has not been held under SB54,

and it is uncertain *exactly* how SB54 would affect the upcoming election, it is clear that the

Unaffiliated Voter Provision "causes the plaintiffs [URP and CPU] to associate with [unaffiliated

voters] during the candidate-selection process,"[76] which is an "unquestionabl[e] . . .

constitutional injury."[77] Therefore, this case is "fit for judicial review despite th[e] uncertainty"

of *precise* impact to URP and CPU.[78]

---

[72] *Id.* at 319.

[73] *Babbitt v. United Farm Workers National Union*, 442 U.S. 289 (1979).

[74] *Miller*, 462 F.3d at 319 (citing *Babbitt*, 442 U.S. at 299).

[75] *Miller*, 462 F.3d at 320 (quoting *Babbitt*, 442 U.S. at 301 n.12) (alteration and quotation marks in original).

[76] *Miller*, 462 F.3d at 318.

[77] *Id.* at 316.

[78] *Id.* at 319.

Because the URP and the CPU are QPPs, they must abide by the provisions applicable to QPPs under SB54. Those provisions require, among other things, that the URP and the CPU allow unaffiliated voters in their primary elections.[79] To quote from *Miller*, "[t]he participation of [unaffiliated voters] in the plaintiffs' upcoming primary is inevitable."[80] Therefore, under an as-applied challenge, the question is whether this forced association is constitutional. That inquiry will now be made. To reiterate, the first issue under this constitutional analysis is whether there is a "severe burden;" the second inquiry is whether, if there is a "severe burden," the State has any compelling interest that outweighs the burden imposed by the law.[81]

### *Forcing a Political Party to Allow Unaffiliated Voters in Its Primary Election Is a "Severe Burden"*

In 1981, the U.S. Supreme Court decided *Democratic Party of the United States v. Wisconsin ex rel. La Follette*.[82] The State of Wisconsin passed an election law that provided for an open primary, which would "allow non-Democrats—including members of other parties and independents—to vote in the Democratic primary without regard to party affiliation and without requiring a public declaration of party preference."[83] "The voters in Wisconsin's 'open' primary express their choice among Presidential candidates for the Democratic Party's nomination; they do not vote for delegates to the National Convention."[84] The delegates, however, "under Wisconsin law, are bound to vote at the National Convention in accord with the results of the open primary election."[85] In other words, the Wisconsin law forced the Democratic Party's

---

[79] Utah Code § 20A-9-101(12)(a).

[80] *Miller*, 462 F.3d at 317.

[81] *E.g.*, *Eu*, 489 U.S. at 222.

[82] *Democratic Party of the United States v. Wisconsin ex rel. La Follette*, 450 U.S. 107 (1981).

[83] *Id.* at 110-111.

[84] *Id.* at 111-12.

[85] *Id.* at 112.

delegates to vote at the National Convention according to the results of the open primary in which non-Democratic Party members cast a ballot. The challenge was directed to the binding effect of the open primary, not to the open primary itself. The Supreme Court explained that

> [o]n several occasions this Court has recognized that the inclusion of persons unaffiliated with a political party may seriously distort its collective decisions—thus impairing the party's essential functions—and that political parties may accordingly protect themselves from intrusion by those with adverse political principles.[86]

The *La Follette* Court held that "a State, or a court, may not constitutionally substitute its own judgment for that of the Party"[87] and said that "the interests advanced by the State [preserving integrity of electoral process, providing secrecy of the ballot, increasing voter participation, and preventing harassment of voters] do not justify its substantial intrusion into the associational freedom of members of the National Party."[88] The Supreme Court ultimately struck down the Wisconsin law binding delegates to vote consistent with the open primary.

Five years later, in *Tashjian v. Republican Party of Connecticut*,[89] the Supreme Court addressed the constitutionality of a different state law which required a *closed* primary. The Connecticut law "require[ed] voters in any party primary to be registered members of that party."[90] Under the Connecticut law, the Republican Party could not, for example, allow registered independents to vote in the Republican Party's primary election—even if the Republican Party *wanted* Independents to vote in the primary. The state law simply would not allow non-registered voters to vote in the primary.

---

[86] *Id.* (internal quotation marks omitted).

[87] *Id.* at 124-25.

[88] *Id.* at 125-26.

[89] *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986).

[90] *Id.* at 210-211.

In striking the Connecticut law down as unconstitutional, the Court wrote that the Republican "Party's attempt to broaden the base of public participation in and support for its activities is conduct undeniably central to the exercise of the right of association. As we have said, the freedom to join together in furtherance of common political beliefs 'necessarily presupposes the freedom to identify the people who constitute the association.'"[91] The Supreme Court concluded that "the State's enforcement, under these circumstances, of its closed primary system burdens the First Amendment rights of the Party. The interests which the [State] adduces in support of the statute are insubstantial . . . ."[92]

After *La Follette* and *Tashjian*, it appeared that a political party's First Amendment rights were strong, and the State had little ability to intrude into a political party's ability to associate with those whom the party selected.

Over a decade later, in 1997, the Supreme Court again took up the issue of political parties' First Amendment rights of association in *Timmons v. Twin Cities Area New Party*.[93] Minnesota passed a law prohibiting candidates from appearing on the ballot as a candidate for more than one political party—a prohibition known as a "fusion ban."[94] A Minnesota State Representative, Andy Dawkins, was nominated to represent the Minnesota Democratic-Farmer-Labor Party in the upcoming election.[95] A separate political party—the "New Party"—selected Dawkins as their candidate for the same office for the same election.[96] "Neither Dawkins nor

---

[91] *Id.* at 214 (quoting *La Follette*, 450 U.S. at 122).

[92] *Tashjian*, 479 U.S. at 225.

[93] *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997).

[94] *Id.* at 353-54.

[95] *Id.* at 354.

[96] *Id.*

the DFL objected, and Dawkins signed the required affidavit of candidacy for the New Party."[97]

However, due to the fusion ban, Minnesota election officials refused to accept the New Party's

nominating petition, so the New Party filed suit "contending that Minnesota's anti-fusion laws

violated the party's associational rights under the First and Fourteenth Amendments."[98]

The *Timmons* Court first explained that "[t]he First Amendment protects the right of

citizens to associate and to form political parties for the advancement of common political goals

and ideas."[99] "On the other hand," the Court explained, "it is also clear that States may, and

inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election-

and campaign-related disorder."[100] The *Timmons* Court explained its test to determine

constitutionality of a state law that burdens a party's associational rights:

> When deciding whether a state election law violates First and Fourteenth
> Amendment associational rights, we weigh the character and magnitude of the
> burden the State's rule imposes on those rights against the interests the State
> contends justify that burden, and consider the extent to which the State's concerns
> make the burden necessary. Regulations imposing severe burdens on plaintiff's
> rights must be narrowly tailored and advance a compelling state interest. Lesser
> burdens, however, trigger less exacting review, and a State's important regulatory
> interests will usually be enough to justify reasonable, nondiscriminatory
> restrictions.[101]

The Court in *Timmons* reasoned that the New Party had a right to select its own

candidate, but it was not "absolutely entitled" to have Dawkins appear on the ballot as the New

Party's nominee. In other words, "[t]hat a particular individual may not appear on the ballot as a

particular party's candidate does not severely burden that party's associational rights."[102]

---

[97] *Id.*

[98] *Id.* at 354-55.

[99] *Id.* at 357.

[100] *Id.* at 358.

[101] *Id.* (internal quotation marks and citations omitted).

[102] *Id.* at 359.

Therefore, because Minnesota's fusion ban did not involve "regulation of political parties' internal affairs and core associational activities," it was unlike *Tashjian* and other prior cases.[103] The Court concluded that

> Minnesota's laws do not restrict the ability of the New Party and its members to endorse, support, or vote for anyone they like. The laws do not directly limit the party's access to the ballot. They are silent on parties' internal structure, governance, and policymaking. Instead, these provisions reduce the universe of potential candidates who may appear on the ballot as the party's nominee only by ruling out those few individuals who both have already agreed to be another party's candidate and also, if forced to choose, themselves prefer that other party. They also limit, slightly, the party's ability to send a message to the voters and to its preferred candidates. We conclude that the burdens Minnesota imposes on the party's First and Fourteenth Amendment associational rights—though not trivial—are not severe.[104]

Weighing the burden of Minnesota's law against the asserted state interests, the Court found that the state interests were sufficient to uphold the law. The Court held that "[s]tates certainly have an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes as means for electing public officials."[105] The Court further held that "[s]tates also have a strong interest in the stability of their political systems."[106] Because the burdens imposed by Minnesota's law were not severe, the State was not required to "narrowly tailor the means it chooses to promote ballot integrity."[107] The law was upheld as constitutional.[108]

---

[103] *Id.* at 360.

[104] *Id.* at 363.

[105] *Id.* at 364.

[106] *Id.* at 366.

[107] *Id.* at 365.

[108] *Id.* at 370. The fusion ban at issue in *Timmons* focused on *candidate* access to the ballot and is not the same as the forced *voter* association issue presented by the Unaffiliated Voter Provision, but the principles addressed in *Timmons* are relevant to understanding the Supreme Court's views on a state's ability to regulate political parties.

The Supreme Court again analyzed political parties' associational rights in 2000, in *California Democratic Party v. Jones*.[109] In *Jones*, California voters had passed an initiative called Proposition 198 that allowed a "blanket primary," in which each voter's ballot in the primary election would list every candidate running for a political office regardless of party affiliation and the voter would be allowed to choose freely among them.[110] Four political parties (the California Democratic Party, the California Republican Party, the Libertarian Party of California, and the Peace and Freedom Party) brought suit, arguing that Proposition 198 violated their First Amendment rights of association.[111]

The *Jones* Court recognized that "States have a major role to play in structuring and monitoring the election process, including primaries[,]" and "may require parties to use the primary format for selecting their nominees, in order to assure that intraparty competition is resolved in a democratic fashion."[112] The Court also recognized that "a State may require parties to demonstrate 'a significant modicum of support' before allowing their candidates a place on that ballot."[113] The Court further recognized that "a State may require party registration a reasonable period of time before a primary election."[114] But the Court also said this:

> What we have not held, however, is that the processes by which political parties select their nominees are . . . wholly public affairs that States may regulate freely. To the contrary, we have continually stressed that when States regulate parties' internal processes they must act within limits imposed by the Constitution.[115]

---

[109] *California Democratic Party v. Jones*, 530 U.S. 567 (2000).

[110] *Id.* at 569-70

[111] *Id.* at 571.

[112] *Id.* at 572.

[113] *Id.*

[114] *Id.*

[115] *Id.* at 572-73.

Citing to *Tashjian* and *La Follette*, the *Jones* Court explained that "the First Amendment protects 'the freedom to join together in furtherance of common political beliefs,' which 'necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only.'"[116] The Court expounded on this idea:

> That is to say, *a corollary of the right to associate is the right not to associate*. Freedom of association would prove an empty guarantee if associations could not limit control over their decisions to those who share the interests and persuasions that underlie the association's being.
> . . .
> In no area is the political association's right to exclude more important than in the process of selecting its nominee. That process often determines the party's positions on the most significant public policy issues of the day, and even when those positions are predetermined it is the nominee who becomes the party's ambassador to the general electorate in winning it over to the party's views."[117]

The *Jones* Court reiterated that prior "cases vigorously affirm the special place the First Amendment reserves for, and the special protection it accords, the process by which a political party select[s] a standard bearer who best represents the party's ideologies and preferences."[118] "The moment of choosing the party's nominee, we have said, is the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power in the community."[119]

The *Jones* Court struck down California's blanket primary, holding that it violated the political parties' associational rights because it "*forces political parties to associate with*—to have their nominees, and hence their positions, determined by—those who, at best, have refused to affiliate with the party, and, at worst, have expressly affiliated with a rival."[120] "In this respect,

---

[116] *Id.* at 574.

[117] *Id.* at 574-75 (emphasis added).

[118] *Id.* at 575 (alteration in original) (internal quotation marks omitted).

[119] *Id.*

[120] *Id.* at 577 (emphasis added).

it is qualitatively different from a closed primary" because "[u]nder that system, even when it is made quite easy for a voter to change his party affiliation the day of the primary, and thus, in some sense, to 'cross over,' at least he must formally *become a member of the party;* and once he does so, he is limited to voting for candidates of that party."[121]

Under California's blanket primary system, however, "the prospect of having a party's nominee determined by adherents of an opposing party [was] far from remote—indeed, it [was] a clear and present danger."[122] Because of this, the Court found the burden to be "severe" and not narrowly tailored to serve a compelling state interest.[123]

California argued that even under the blanket primary system, political parties were "free to endorse and financially support the candidate of their choice in the primary."[124] But the Court rejected this argument, making clear that "[t]he ability of the party leadership to endorse a candidate is simply no substitute for the party members' ability to *choose* their own nominee."[125] In the end, the California blanket primary was held unconstitutional because it "*forc[ed]* political parties to associate with those who do not share their beliefs."[126]

In 2005, the Supreme Court again faced the question of political parties' rights of association in *Clingman v. Beaver.*[127] There, the State of Oklahoma enacted a law providing for a "semiclosed" primary, "in which a political party may invite only its own party members and voters registered as Independents to vote in the party's primary."[128] The Libertarian Party of

---

[121] *Id.* (emphasis in original).

[122] *Id.* at 578.

[123] *Id.* at 581-82; *id.* at 585-86.

[124] *Id.* at 580.

[125] *Id.* (emphasis added).

[126] *Id.* at 586 (emphasis added).

[127] *Clingman v. Beaver,* 544 U.S. 581 (2005).

[128] *Id.* at 584.

Oklahoma ("LPO"), along with several Republican and Democratic voters,[129] sued, arguing that the law violated its right to freely associate under the First Amendment.[130] The Court disagreed with the LPO and upheld the Oklahoma law because, unlike some of the prior cases such as *La Follette*, *Tashjian*, and *Jones*, the Oklahoma law did *not* "compel the LPO's association with unwanted members or voters[.]"[131] Further, "[a]s in *Timmons*, Oklahoma's law [did] not regulate the LPO's internal processes, its authority to exclude unwanted members, or its capacity to communicate with the public."[132] Therefore, the law was *not* a "severe" burden on the political party because, rather than *force association* with unwanted members or voters, thereby diluting a party's decision making processes, the law *disallowed association* with a "boundless" pool of voters.[133] The law was upheld as constitutional.[134]

     While a state has the authority to regulate elections and even require that political parties hold a primary election, or manage the ballot by limiting multiple party appearances for one candidate, a state *may not force a political party to allow unaffiliated voters in its primary election*. Such a requirement is a "severe" burden on the political party's First Amendment rights because it dilutes the party's ability to determine its candidates, and will only be upheld if it is narrowly tailored to a compelling state interest. No case, however, has upheld a forced open primary.

---

[129] *Id.* at 585.

[130] *Id.* at 584.

[131] *Id.* at 587.

[132] *Id.* at 590.

[133] *Id.* at 589.

[134] *Id.* at 598.

***The Unaffiliated Voter Provision in SB54 Is a Severe Burden and Must Be Struck Down Unless There Is a Compelling State Interest***

The definition of a QPP in SB54 provides that a "qualified political party" is a registered political party that:

> (a) permits voters who are unaffiliated with any political party to vote for the registered political party's candidates in a primary election; . . . .[135]

Under the "Unaffiliated Voter Provision," a political party desiring to become a QPP must open its primary to unaffiliated voters. When the political party becomes a QPP, it has no ability to bar unaffiliated voters from its primary.

The Unaffiliated Voter Provision falls squarely in line with the cases holding that forced association is a severe burden and must be struck down absent a compelling state interest. Unlike *Clingman*, which upheld a state law that prohibited political parties from allowing *too many* voters in its voting pool, the Unaffiliated Voter Provision affirmatively requires a QPP to accept unaffiliated voters in its primary election. That is, it *mandates association* with unaffiliated voters. This type of mandated association has never been upheld and is in direct contrast to the prevailing case law protecting the "right not to associate."[136]

"In no area is the political association's right to exclude more important than in the process of selecting its nominee. That process often determines the party's positions on the most significant public policy issues of the day, and even when those positions are predetermined it is the nominee who becomes the party's ambassador to the general electorate in winning it over to the party's views."[137]

---

[135] Utah Code § 20A-9-101(12)(a) ("Unaffiliated Voter Provision").

[136] *Jones*, 530 U.S. at 574.

[137] *Id.* at 575.

The Unaffiliated Voter Provision is much different than the corresponding requirements for an RPP under SB54. Under the RPP path, an RPP is allowed to identify "one or more registered political parties whose members may vote for the registered political party's candidates *and whether or not persons identified as unaffiliated with a political party may vote for the registered political party's candidates . . . .*"[138] Thus, under SB54, an RPP has the ability to close its primary, while a QPP may not. According to the cases outlined above, this is a "severe" burden on a QPP.

The State argues that the Unaffiliated Voter Provision is not unconstitutional as applied to the URP or CPU because the URP and CPU did not have to choose to be a QPP, but could have chosen to follow the RPP path and avoid the Unaffiliated Voter Provision altogether. Therefore, the State contends, SB54 "does not force the parties to associate with non-party members . . . ."[139] Instead, the State argues, SB54 allows political parties *a choice* to become either a QPP or remain an RPP. Essentially, the State argues that because Parties chose to subject themselves to the Unaffiliated Voter Provision they cannot now complain that *the State* which forced association with unaffiliated voters. This is incorrect.

The State cites *Miller v. Brown*[140] in support of its argument that a law which allows a choice is constitutional. But the State fails to recognize that *Miller discussed choice only in holding* that the state law at issue was *facially* constitutional. When analyzing that same law after the choice was made, the court found the law *unconstitutional as-applied.*[141] The state law at issue in *Miller* allowed a political party to "select from various methods" to nominate a candidate

---

[138] Utah Code Ann. § 20A-9-403(2)(a)(ii) (emphasis added).

[139] State Motion at 6.

[140] *Miller v. Brown*, 503 F.3d 360 (4th Cir. 2007).

[141] *Id.* at 371 ("Accordingly, we affirm the holding of the district court that [the state law at issue] is unconstitutional as applied to the [plaintiff political party].").

for the general election, but if the political party "chooses to hold a primary operated and funded by the state, . . . it must allow all voters to participate."[142] The ability to choose saved the law in *Miller* from a facial challenge, but after the primary method was chosen, and the political party was forced to "conduct a mandatory open primary for the selection of a party candidate,"[143] the law did not survive an as-applied challenge.[144]

The same conclusion is reached here. SB54 is facially constitutional because there is a set of circumstances under which the law is valid.[145] However, through the Unaffiliated Voter Provision, a QPP is required by the State to allow unaffiliated voters to vote in the QPP's primary election. In Utah, this means allowing about 610,000 unaffiliated voters into a QPP's primary election.

The CPU argued this is a severe burden because it has only about 4,000 members and is the smallest political party in the state.[146] Therefore, even if its entire membership wanted to reject a particular candidate, less than one percent of unaffiliated voters could overrule the party members' preference. Furthermore, by requiring CPU to include in its primary voters who may not share its views, the Unaffiliated Voter Provision alters the way CPU conveys its message and is a severe burden on the CPU.

Similarly, the Unaffiliated Voter Provision is a severe burden on the URP. Even though the URP has significantly more members than CPU—there are about 640,000 registered

---

[142] *Id.* at 368.

[143] *Id.*

[144] *Id.* at 371. As explained above, a separate appeal went to the Fourth Circuit in *Miller* regarding standing and ripeness, and the Fourth Circuit held that an election need not take place before making a decision on the constitutionality of the law at issue. *Miller*, 462 F.3d 312 (4th Cir. 2006).

[145] *See infra.*

[146] CPU Opposition at 9-10.

Republicans in Utah[147]—the forced association severely burdens the URP because it nearly doubles the number of voters in a URP primary election. Those are voters who evidently do not share the URP's views enough to become members of the URP.

Therefore, as applied to the parties in this case, the Unaffiliated Voter Provision is a severe burden because it forces QPPs to flood their primary elections with thousands of unaffiliated voters. Accordingly, the Unaffiliated Voter Provision must be struck down unless it is "narrowly drawn to advance a State interest of compelling importance."[148]

### The State Has Not Shown a Compelling State Interest for the Unaffiliated Voter Provision

The State advances four interests to support the Unaffiliated Voter Provision: "1) increasing candidates' access to the ballot for party members; 2) increasing voter participation; 3) enhancing the democratic character of elections; and 4) reducing fraud and corruption."[149]

First, the State argues that "it is clear the statutory provisions will increase party members' access to the ballot. By providing a direct path to the primary through the gathering of signatures on nominating petitions, the statute expands the paths available to candidates who wish to run for public office."[150] The State further argues that it "cannot be disputed that expanding access to those who wish to serve in public office furthers the compelling state interest of creating a more representative government."[151] This asserted interest was raised in *Jones*, but the U.S. Supreme Court said it was "simply circumlocution for producing nominees

---

[147] Undisputed Fact No. 26.

[148] *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

[149] State Motion at 9.

[150] *Id.*

[151] *Id.*

and nominee positions other than those the parties would choose if left to their own devices."[152] The U.S. Supreme Court rejected this as a so-called compelling interest because it "reduce[d] to nothing more than a stark repudiation of freedom of political association . . . ."[153] Thus, the State's first asserted interest—increasing candidates' access to the ballot—is not a compelling state interest, particularly as to forcing an open primary. This interest is more directed to SB54's provisions allowing nomination of candidates by petition.

Second, the State argues that "voter participation will increase when elections are conducted under the new law."[154] This is a good thing, according to the State, because "[g]reater voter participation is a hallmark of a vibrant democracy."[155] But this asserted interest was raised and rejected in *Jones* and *Miller*. The U.S. Supreme Court in *Jones* instructed that increasing voter participation is "just a variation on the same theme" of "broadening the range of choices *favored by the majority* . . . [which is] hardly a compelling state interest, if indeed it is even a legitimate one."[156] The *Miller* court noted that "[w]hile allowing the broadest possible group of voters to participate in a primary may be desirable, this interest cannot overcome the severe burden placed upon a political party when it is forced to associate with those who may not share its views."[157] Thus, the State's second asserted interest—increasing voter participation—is not a compelling state interest.

---

[152] *Jones*, 530 U.S. at 582.

[153] *Id.*

[154] State Motion at 10.

[155] *Id.* (without citation).

[156] *Jones*, 530 U.S. at 584 (emphasis in original).

[157] *Miller*, 503 F.3d at 371.

Third, the State argues that "[b]y mandating that the parties' nominees are selected by a direct primary election, the statute also promotes a more democratic election process . . . ."[158] There is no question that mandating a selection of candidates through primary election is within a State's powers,[159] but that interest is entirely fulfilled without mandating an open primary.

Fourth, the State argues that fraud and corruption will be reduced by requiring a QPP to hold a "direct primary."[160] Again, the Unaffiliated Voter Provision is not critical to SB54's requirement of selection of party nominees through a primary election.

The State points to *Alaskan Independence Party v. Alaska*[161] for support because the state's asserted interest in "eliminating the fraud and corruption that frequently accompanied party-run nominating conventions" was held by the Ninth Circuit to be a compelling state interest and the law was narrowly tailored to accomplish its objectives.[162] This is true. The Ninth Circuit did reach this conclusion, holding that "the State's interest in enhancing the democratic character of the election process overrides whatever interest the Party has in designing its own rules for nominating candidates, such as its desire to nominate through party-run convention"[163] and that, under *Jones*, it is "too plain for argument that a State may require parties to use the primary format for selecting their nominees . . . ."[164]

Without commenting on whether the *Alaskan Independence Party* decision is correct (the U.S. Supreme Court did not hear an appeal of this decision), it should be underscored that, as the

---

[158] State Motion at 10.

[159] *Alaskan Independence Party v. Alaska*, 545 F.3d 1173, 1178 (9th Cir. 2008).

[160] State Motion at 10.

[161] 545 F.3d 1173 (9th Cir. 2008).

[162] *Id.* at 1180.

[163] *Id.* at 1178 (internal quotation marks and citations omitted).

[164] *Id.* (internal quotation marks omitted).

State points out in its brief,[165] Alaska's law *allowed the party to choose who participated in the party's primary election*.[166] Thus, the law at issue in *Alaskan Independence Party* was *very* different from SB54 because it did not *force* association. Instead, the party decided whether to allow unaffiliated voters into its primary election. SB54 would be constitutional if it merely *permitted* a party to allow unaffiliated voters to vote in the primary instead of forcing the association. But such a change may only be made by the legislature.

Accordingly, while it is true that a state has authority to require the primary format for selecting nominees, it cannot force the party to associate with those who are not affiliated with the party. As with the other asserted interests above, the State's asserted interest of eliminating fraud and corruption—in addition to being unsupported by evidence in the record or any undisputed facts—is not a compelling interest that justifies infringing on the URP's and CPU's right of association.

Therefore, none of the asserted interests articulated by the State is a compelling interest that outweighs the severe burden imposed on the URP and the CPU through the Unaffiliated Voter Provision. Because none of the States' asserted interests is compelling, no analysis is needed as to whether the legislation is "narrowly drawn."

### The State Is Not Entitled to Summary Judgment as to the Unaffiliated Voter Provision

Forcing a political party to associate with those outside its party is a severe burden on political parties' associational rights. The Unaffiliated Voter Provision does that, and therefore it is unconstitutional unless a compelling state interest justifies the burden. The State has failed to advance any compelling interest to justify the Unaffiliated Voter Provision. No case has found a

---

[165] State Motion at 10.

[166] *Alaskan Independence Party*, 545 F.3d at 1174 ("Nominees are then chosen by the vote of party-affiliated voters and any other voters *whom the parties choose to let participate*." (emphasis added)).

sufficient compelling state interest to justify a forced open primary election. Therefore, the State is not entitled to summary judgment as to the Unaffiliated Voter Provision.

**The Facial Challenge to SB54 Fails**

The State argues that in order for CPU to succeed in its facial challenge,[167] it must show that there is *no set of circumstances* under which the challenged law could be valid.[168] To succeed in a facial attack, "the challenger must establish that no set of circumstances exists under which the Act would be valid."[169] This is "the most difficult challenge to mount successfully[,]"[170] and CPU fails in this challenge.

The State argues that "because the RPP path to the ballot does not force association with non-party members and, thus, does not burden the Party's constitutional rights[,]" SB54 is not facially unconstitutional.[171] The State is correct.

CPU argues that SB54 *could be* facially unconstitutional because it *requires a primary* to be held under either the RPP or QPP path.[172] But CPU virtually concedes this argument, acknowledging that "[t]his Court has ruled that a facial challenge would fail" and that "in order to succeed on a facial challenge against this issue (whether or not the [S]tate can force a party to use a primary or convention system for nominating candidates), the United States Supreme Court would likely have to overrule past precedence [sic]."[173] CPU recognized that "this Court cannot

---

[167] Only CPU raised a facial challenge to SB54; the URP did not. *See generally* [URP] Complaint; [CPU] Amended Complaint ¶¶ 36 (a), (c), (e), (g), (i).

[168] State Motion at 2 (citing *Washington State Grange*, 552 U.S. at 450-51; *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

[169] *Salerno*, 481 U.S. at 745.

[170] *Id.*

[171] State Motion at 3.

[172] CPU Opposition at 17.

[173] *Id.*

overrule Supreme Court precedence [sic]," but advances its argument "in a good faith effort to argue for the 'reversing [of] existing law'" and "to preserve its argument for appeal[.]"[174]

CPU's efforts to preserve its argument for appeal are recognized, but, as CPU recognized, a federal district court cannot overrule U.S. Supreme Court precedent. The U.S. Supreme Court has clearly held that "it is beyond question that States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder."[175] More specifically, the U.S. Supreme Court has stated that it is "too plain for argument, for example, that a State may require parties to use the primary format for selecting their nominees, in order to assure that intraparty competition is resolved in a democratic fashion."[176] Thus, CPU is unsuccessful in arguing that SB54 is facially unconstitutional because it requires QPPs and RPPs to hold a primary election.

Because the RPP path is a set of circumstances under which SB54 is valid, the State is correct that SB54 is *facially* constitutional .

If, under SB54, a political party chooses to be an RPP, only members of that RPP can declare candidacy;[177] only members of the RPP can sign petitions for candidates to gain access to the ballot;[178] the RPP can control who votes in its primary and close its primary to those with

---

[174] *Id.* at 17-18.

[175] *Clingman*, 544 U.S. at 593.

[176] *Jones*, 530 U.S. at 572.

[177] Utah Code § 20A-9-201 (as amended by SB207) ("(1) Before filing a declaration of candidacy for election to any office, a person shall: . . . state . . . (i) the registered political party of which the person is a member . . . .").

[178] Utah Code § 20A-9-403(3)(a)(ii) ("[A] person who has submitted a declaration of candidacy . . . shall appear as a candidate for elective office on the regular primary ballot of the registered political party listed on the declaration of candidacy only if the person is certified by the appropriate filing officer as having submitted a set of nominating petitions that was . . . (ii) signed by at least two percent of the registered political party's members who reside in the political division of the office that the person seeks.").

whom it chooses not to associate;[179] only candidates that prevail in the RPP's primary are entitled to have the RPP's symbol next to their names on the general election ballot;[180] the RPP may still hold a convention; and the RPP is free to endorse, campaign, fundraise, lobby, and advertise on behalf of its chosen candidates. None of these imposes a "severe burden" on the RPP, and no other "severe burden" has been identified by CPU under the RPP path. Therefore, because the RPP path does not impose a severe burden on an RPP, the State is correct that SB54 is *facially* constitutional.[181]

**The State Motion is Granted in Part and Denied in Part**

The State Motion is GRANTED IN PART and DENIED IN PART. The State has shown that there is no genuine issue of material fact regarding the *facial* constitutionality of SB54. Therefore, the State Motion is GRANTED with respect to SB54's facial constitutionality. However, the because the Unaffiliated Voter Provision severely burdens the CPU's and the URP's associational rights without a compelling state interest, the State's request for summary judgment with regard to the Unaffiliated Voter Provision is DENIED.

**THE CPU MOTION**

CPU seeks a ruling that two provisions of SB54 are unconstitutional: (1) the Unaffiliated Voter Provision;[182] and (2) the Signature Gathering Provision.[183] CPU argues that these

---

[179] Utah Code § 20A-9-403(2)(a)(ii) ("Each registered political party . . . shall . . . (ii) . . . identify one or more registered political parties whose members may vote for the registered political party's candidates *and whether or not persons identified as unaffiliated with a political party may vote for the registered political party's candidates*[.]").

[180] Utah Code § 20A-6-301(1)(a)(ii) ("Each election officer shall ensure that: (a) all paper ballots furnished for use at the regular general election contain: . . . (ii) no symbols, markings, or other descriptions of a political party or group, except for a registered political party that has chosen to nominate its candidates in accordance with Section 20A-9-403[.]").

[181] *See Miller*, 503 F.3d at 364-68.

[182] Utah Code § 20A-9-101(12)(a).

[183] Utah Code § 20A-9-408 ("Signature Gathering Provision").

provisions are unconstitutional because they force CPU "to associate with unaffiliated voters in violation of its First Amendment right of association.[184] Each of these provisions will be discussed in turn below.

**The Unaffiliated Voter Provision is Unconstitutional**

For the reasons discussed above, the CPU is correct that the Unaffiliated Voter Provision is unconstitutional because it forces the CPU to associate with unaffiliated voters in contravention of the CPU's First Amendment right of association. Therefore, the CPU Motion is GRANTED as to the Unaffiliated Voter Provision.

**The Signature Gathering Provision is Constitutional after the Unaffiliated Voter Provision is Stricken[185]**

The other provision CPU argues is unconstitutional is the Signature Gathering Provision, which requires a candidate to obtain "28,000 signatures of registered voters in the state who are permitted by the [QPP] to vote for the [QPP]'s candidates in a primary election" in order to run for political office.[186] CPU argues that since CPU has just over 4,000 members, "the vast majority of signers would be unaffiliated voters," and the unaffiliated voters' signatures would drown out the Constitution Party voters' voice.[187] Therefore, according to CPU, the Signature Gathering Provision "is unconstitutional for all of the same reasons that [the Unaffiliated Voter Provision] is."[188]

However, the CPU also remarks that "[i]f the Court strikes down [the Unaffiliated Voter Provision], then this section [the Signature Gathering Provision] loses the danger of having

---

[184] CPU Motion at 1-2.

[185] Utah Code § 20A-9-408.

[186] CPU Motion at 16 (quoting Utah Code § 20A-9-408).

[187] CPU Motion at 16.

[188] *Id.*

unaffiliated voters signing petitions . . . ."[189] But at that point, "it also becomes an irrational measure because it requires a candidate to collect 28,000 signatures [from] just over 4,000 party members."[190] The State also recognizes that "striking [the Unaffiliated Voter Provision] would greatly reduce the number of available petition signatories and make it more difficult, and in some instances impossible, for a CPU candidate to access the primary ballot."[191]

Because the Unaffiliated Voter Provision has been found unconstitutional and unenforceable, the danger the CPU was concerned about—having unaffiliated voters signing petitions for CPU candidates (candidates who may not subscribe to the CPU's values and principles)—has been eliminated. The risks associated with the Signature Gathering Provision no longer exist.[192] There is no forced association under the Signature Gathering Provision because unaffiliated voters will not be allowed to sign petitions for CPU candidates. There is no basis to find the Signature Gathering Provision unconstitutional.

**The CPU Motion is Granted in Part and Denied in Part**

The CPU Motion is GRANTED IN PART and DENIED IN PART. Because the Unaffiliated Voter Provision severely burdens the CPU's associational rights without a compelling state interest, the CPU's Motion is GRANTED as to the Unaffiliated Voter Provision. And because the striking down of the Unaffiliated Voter Provision resolves the concerns CPU had with the Signature Gathering Provision, CPU's Motion is DENIED with regard to the Signature Gathering Provision.

---

[189] *Id.*

[190] *Id.*

[191] State Opposition at 15.

[192] Because there are currently only about 4,000 CPU members, it is impossible at this time for potential CPU candidates to utilize the Signature Gathering Provision to appear on the ballot.

### UTAH CODE § 20A-9-406(1)(a) REPLACES THE FUNCTION OF THE UNAFFILIATED VOTER PROVISION

When a provision of a law is unconstitutional, a court may "blue-pencil," or strike out, the unconstitutional provision.[193] In order to do so, the provision must be severable.[194] Usually, only the unconstitutional applications of a statute will be enjoined while the other applications remain in force,[195] or problematic portions are severed while leaving the remainder intact.[196]

Three interrelated principles inform the approach to remedies.[197] First, the legislature's work is nullified no more than is necessary because "[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people." Second, a court will refrain from "rewrit[ing] state law to conform it to constitutional requirements." And third, because a court cannot "use its remedial powers to circumvent the intent of the legislature," after finding an application or portion of a statute unconstitutional, the question is whether the legislature would have preferred what is left of its statute after the unconstitutional provision is stricken, or no statute at all.[198]

The Utah Legislature clearly instructed that the provisions of SB54 are severable, and that if portions or applications of SB54 are found to be unconstitutional, the Utah Legislature would prefer to leave the rest of the provisions intact. The plain language of SB54 provides that "[i]f any provision of [SB54] or the application of any provision of [SB54] . . . is held invalid by a final decision of a court of competent jurisdiction, the remainder of [SB54] shall be given

---

[193] *Dada v. Mukasey*, 554 U.S. 1, 27 (2008).

[194] *Id.* ("Of course it is not unusual for the Court to blue-pencil a statute in this fashion, directing that one of its provisions, severable from the rest, be disregarded. But that is done when the blue-penciled provision is *unconstitutional*." (emphasis in original)).

[195] *See United States v. Raines*, 362 U.S. 17, 20–22 (1960).

[196] *United States v. Booker*, 543 U.S. 220, 227–229 (2005).

[197] *Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320, 329 (2006).

[198] *Id.* at 329-330.

effect without the invalid provision or application. The provisions of [SB54] are severable."[199]
Thus, the Unaffiliated Voter Provision is severable from the remaining portions of SB54.

But the Unaffiliated Voter Provision defined who may vote in the URP's and CPU's primaries. In the absence of this provision, some definition of QPP primary participation is needed. The provisions immediately surrounding the Unaffiliated Voter Provision in section 101 do not provide any guidance. However, Utah Code § 20A-9-406 provides authority for a QPP to designate who may vote for the QPP's candidates. That section explains that by "March 1 of each even-numbered year," the QPP must certify to the Lieutenant Governor "the identity of one or more registered political parties whose members may vote for the [QPP]'s candidates . . . ."[200] Therefore, in the absence of the Unaffiliated Voter Provision mandating that a QPP allow unaffiliated voters to vote in its primary election, section 406 allows the QPP to designate who may vote for the QPP's candidates. The State and the Parties agreed at the October 27 hearing that this provision fills the gap caused by the loss of the Unaffiliated Voter Provision.[201] The legislature would have preferred what is left of its statute after the unconstitutional provision is stricken.

Under section 406, the QPP *is able to choose* who votes for its candidates, while the Unaffiliated Voter Provision would have the State *dictate* to the QPP who will vote in its primary. Although subsection 406 does not expressly allow a QPP to designate unaffiliated voters to vote in its primary, such a deficiency is not unconstitutional.[202] Therefore, subsection 406 has no constitutional infirmity and adequately replaces the Unaffiliated Voter Provision.

---

[199] Utah Code § 20A-1-103.

[200] Utah Code § 20A-9-406(1)(a).

[201] Partial Transcript at 3:17 – 7:19, docket no. 206, filed November 3, 2015.

[202] *See Clingman*, 544 U.S. at 589-90 (upholding law that limited political parties' ability to open their primary elections to all voters).

**REMAINING CLAIMS**

The as-applied constitutionality of the Unaffiliated Voter Provision and the facial constitutionality of SB54 as a whole are the only issues specifically briefed by the parties. The Parties' additional claims are moot because they were relinquished during the hearing on October 27. After being notified that a ruling would likely declare the Unaffiliated Voter Provision unconstitutional as applied on the basis of this record, both the URP and the CPU, after conferring with client representatives and co-counsel, said no other claims would require resolution.[203] The CPU recognized that if the State Motion were granted declaring SB54 facially constitutional, the CPU's facial challenge to SB54's requirement of a "direct primary," would be preserved for appeal. The State agreed that the case needed no further action.[204]

Therefore, for these reasons, the CPU's and the URP's "additional claims," including arguments related to state and federal statutes, the Utah Constitution, and the United States Constitution are considered moot. Attorneys' fees and costs for the "prevailing party" under 42 U.S.C. § 1988(b) remain.

**RULE 56(F) GRANT OF SUMMARY JUDGMENT FOR URP**

"After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant . . . ."[205] The URP is a nonmovant.

On October 27, 2015, after advising the parties in the hearing that notice would be given, the following notice was given:

> Under Fed. R. Civ. P. 56(f) the court may grant summary judgment for nonmovant Utah Republican Party on the issue of constitutionality of 20A-9-101(12)(a) based on the language of the statute. This issue has been fully briefed in the motions filed by the other parties, and in prior briefing. If the Defendants

---

[203] Partial Transcript at 11:20 – 12:20.

[204] *Id.* at 12:21-24.

[205] Fed. R. Civ. P. 56(f).

desire, they may file a response to this possible grant of summary judgment on or before Noon, November 6, 2015. If Defendants elect not to file such a response, they shall file a notice of that choice on or before November 3, 2015.[206]

Thus, the court gave notice and a reasonable time to respond pursuant to Rule 56(f). The State filed a notice that it would not respond to the 56(f) notice.[207] Therefore, the court enters summary judgment for nonmovant URP, declaring the Unaffiliated Voter Provision unconstitutional as applied to the URP, for the reasons set forth in this memorandum decision and order.

## CONCLUSION

The State has shown that there is no genuine issue of material fact regarding the *facial* constitutionality of SB54. However, the because the Unaffiliated Voter Provision severely burdens the CPU's and the URP's associational rights without a compelling state interest, the State is not entitled to summary judgment with regard to the Unaffiliated Voter Provision. Instead, CPU is entitled to summary judgment declaring the Unaffiliated Voter Provision unconstitutional as applied to the CPU. With respect to the nonmovant URP, the court enters the same ruling.

Because the Unaffiliated Voter Provision resolves CPU's concerns had with the Signature Gathering Provision, the Signature Gathering Provision is now constitutional. The CPU's and the URP's "additional claims," including arguments related to state and federal statutes, the Utah Constitution, and the United States Constitution are moot.

---

[206] Minute Entry, docket no. 202, entered October 27, 2015.

[207] Notice of No Response, docket no. 205, filed October 29, 2015 (providing notice of no opposition).

**ORDER**

IT IS HEREBY ORDERED that the State Motion[208] is GRANTED IN PART and DENIED IN PART. CPU's claims for declaratory judgment and injunction against SB54 on a facial challenge are dismissed. But the State Motion is DENIED in all other respects.

IT IS FURTHER ORDERED that the CPU Motion[209] is GRANTED IN PART and DENIED IN PART. CPU's claims for declaratory judgment and injunction against Utah Code Ann. § 20A-9-101(12)(a) as applied to CPU are GRANTED. CPU's claim that Utah Code § 20A-9-408 is unconstitutional as applied to CPU is DENIED.

IT IS FURTHER ORDERED that summary judgment is GRANTED in favor of nonmovant URP under Rule 56(f). Utah Code Ann. § 20A-9-101(12)(a) is unconstitutional as applied to URP.

IT IS FURTHER ORDERED that all other claims presented are dismissed.

The form of a declaratory judgment and injunction will be provided to the parties within two weeks for their comments before entry.

The Clerk is directed to close the case.

Dated November 3, 2015.

BY THE COURT:

David Nuffer
United States District Judge

---

[208] Defendants' Motion for Summary Judgment ("State Motion"), docket no. 162, filed September 21, 2015.

[209] Motion for Partial Summary Judgment and Memorandum in Support ("CPU Motion"), docket no. 163, filed September 21, 2015.