Karra J. Porter (5223)
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 323-5000
Karra.Porter@chrisjen.com
*Attorney for Plaintiff Utah Republican Party*

---

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

---

| | |
|---|---|
| UTAH REPUBLICAN PARTY,<br><br>    Plaintiff,<br><br>CONSTITUTION PARTY OF UTAH,<br><br>    Plaintiff and Intervenor,<br><br>v.<br><br>GARY R. HERBERT, et al.,<br><br>    Defendants. | **MOTION TO RECONSIDER THE COURT'S DENIAL [228] OF PLAINTIFF'S MOTIONS TO ENLARGE TIME TO FILE MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Case No. 2:14-cv-00876-DN<br><br>Judge David Nuffer<br>Magistrate Judge Dustin B. Pead |

By and through undersigned counsel newly appearing in this matter, the Utah Republican Party (the "Party") respectfully submits the following motion to reconsider the Court's Order entered December 14, 2015, denying the Party's motions to enlarge time and striking the Party's motion for attorneys' fees and costs (the "Striking Order").[1] It is timely filed under Fed. R. Civ. P. 59(e) in that it is filed within 28 days of the Court's Striking Order.[2]

The Party is aware that motions to reconsider are generally disfavored, but they can be brought where there is "(1) an intervening change in the controlling law, (2) new evidence

---

[1] Doc. 228.

[2] *See Autorama Corp. v. Stewart*, 802 F.2d 1284, 1286 (10th Cir. 1986) ("Any motion that draws into question the correctness of the judgment is functionally a motion under Civil Rule 59(e), whatever its label. Thus, a motion to 'reconsider' ... is a motion under Rule 59(e)....").

previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice."[3] This motion is brought on newly acquired evidence, and to correct clear error and prevent manifest injustice.

The Court based its Striking Order on two grounds:

- <u>Timeliness of the first motion to enlarge time</u>.  The Court found that the Party's first motion to enlarge time was untimely in that it was filed at 12:01 a.m., on December 8, 2015, when the motion for attorney fees was due December 7, 2015. By not filing the first motion to enlarge until one minute after midnight, the Court concluded that "Mr. Mumford disregarded the deadline" for filing the Party's motion for attorneys fees: he should have "'requested leave from the court [for additional time] *before the deadline has lapsed* …. Choosing to disregard a deadline is sanctionable conduct.'"[4] The Court also suggested that Mr. Mumford violated Rule 6(b) by "not seek[ing] to stipulate to an extension with opposing counsel" prior to making the motion.[5]

- <u>The history of the case</u>. The Court found that the Party was undeserving of an extension of time under either the "good cause" or "excusable neglect" standards based on "the history of this case and Mr. Mumford's continued disregard for court deadlines."[6] The Court rejected the Party's argument based on the difficulties Mr. Mumford experienced in coordinating filing of the motion for fees with co-counsel, pointing out how Mr. Mumford had been ordered "to retain co-counsel specifically to remedy these types of

---

[3] *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).
[4] Doc. 228 at 2 (quoting Doc. 196 at 12).
[5] Doc. 228 at 2 & n.5.
[6] Doc. 228 at 4.

situations."[7] The Court also rejected the Party's argument based on the unexpected medical issues Mr. Mumford's paralegal faced on December 7, 2015, because Mr. Mumford could have "filed the motion prior to December 7."[8]

## ARGUMENT

### I. There Is No Evidence That Mr. Mumford "Disregarded" The Deadline.

Respectfully, it is inaccurate to describe Mr. Mumford's conduct on the evening of December 7, 2015, as having "disregarded" the deadline for filing the Party's motion for fees. To the contrary, the Party's motion to enlarge time showed how Mr. Mumford had filed five different briefs with this Court between 10:00 p.m. and 12:01 a.m. on the evening of December 7.[9] In fact, it was only because the Court's CM/ECF system unexpectedly terminated Mr. Mumford's CM/ECF session that he was one minute late in filing the motion to enlarge time.[10] With this motion, the Party is submitting the log records it obtained from the Clerk's office showing Mr. Mumford's logins on the evening of December 7.[11] The Clerk's office informed the Party that it does not keep a log of when sessions terminate. With the attached declaration of Mr. Mumford, this evidence shows that Mr. Mumford's session was terminated, requiring him to log

---

[7] Doc. 228 at 4.
[8] Doc. 228 at 3.
[9] Doc. 221 at 4 n.1. Mr. Mumford filed four matters between 10:00 and midnight in *United States v. Johnson*, et al., Case No. 2:11-cr-00501- DN-PMW (D. Utah), where he is court-appointed counsel for one of the defendants (see Docs. 802, 804, 805 & 806). After the last of those filings, Mr. Mumford experienced technical difficulties in maintaining his connection to the CM/ECF system, which terminated his session and required that he log back in before accepting the filing of the motion to enlarge time, so that it was not filed until "0:01 AM MST … on 12/8/2015." Doc. 219.
[10] See Declaration of Marcus R. Mumford ("Mumford Decl."), attached hereto as Exhibit 1.
[11] See email from Robert Janzen, attached as Mumford Decl., Exhibit A.

3

back into the CM/ECF system at 00:00:25 in order to file the motion to enlarge time.[12] But for that fact, the motion would have been timely filed on December 7, 2015.

The Party acknowledges case law from other courts holding that "difficulty logging into CM/ECF" does not, in itself, constitute "good cause" or "excusable neglect" under F.R.Civ. P. 6(e).[13] But that is not the argument the Party is making. And the Party has not seen any case refusing to consider such unforeseen e-filing system problems where the attorney had made several successful filings that same day in other matters. Rather, the Party is seeking to present newly-obtained evidence from the Court's CM/ECF system corroborating the glitch that Mr. Mumford experienced as he was attempting to file the motion to enlarge time prior to the deadline. And it remains true that the length of delay was one minute, and Defendants did not show any actual prejudice. (Defendants refused Mr. Mumford's offer to provide a reciprocal extension of time only to move thereafter for the very relief Mr. Mumford had offered.[14])

The Court might observe that Mr. Mumford should not have cut things so close. That is a fair admonition, but not grounds to conclude that Mr. Mumford "disregarded" the deadline.[15]

---

[12] Mumford Decl. at ¶¶ 4-5.

[13] *See, e.g., Hoy v. Yamhill County*, 2015 WL 5664262, at *2 (D. Or. Sept. 21, 2015); *Smith v. Look Cycle USA*, 933 F.Supp.2d 787, 791 (E.D. Va. 2013).

[14] *See, e.g., Kerr v. Dillard Store Services, Inc.*, 2009 WL 385863, at *1 n.1 (D. Kan. Feb. 17, 2009) (finding "excusable neglect" based on length of delay of less than 24 hours, lack of prejudice to defendants, and counsel's unforeseen computer problems which arose during her attempt to timely file); *Fernandes v. Craine*, 538 Fed.Appx. 274, 276 (4th Cir. 2013) (vacating and remanding a district court's denial of a motion to extend time to file a motion for attorneys fees in a civil rights case, distinguishing cases where "the lawyer was aware of his computer troubles and made the 'strategic decision' to remain 'willfully blind'" from those where there was "nothing in this record suggesting that [the plaintiff's] lawyer was aware of any computer problems, that he was willfully blind to the status of the electronic docket, or that he made a strategic choice to remain ignorant of the district court's judgment.").

[15] *See Disregard*, Merriam-Webster.com ("to pay no attention to; treat as unworthy of regard or notice") (available at http://www.merriam-webster.com/dictionary/disregard).

Mr. Mumford met all four deadlines in filings before the Court on a different matter that very evening, and would have met the deadline in this case, filing the motion to enlarge time before time expired, but for an error in the CM/ECF system that terminated his existing session before he filed the motion to enlarge time.

The Court asserted that Mr. Mumford failed to understand the difference between asking for an extension *before* a deadline has passed and asking for an extension of an *already-expired* deadline.[16] But Mr. Mumford prepared the motion to enlarge time and attempted to file it before the deadline passed. Based on the new evidence corroborating Mr. Mumford's attempts to file the first motion to extend time one minute earlier – and thus prior to the deadline – the Party asks that the Court revisit its Striking Order to allow the issue of fees to be considered on the merits.

## II. It Was Wrong To Base The Striking Order On The Failure To Seek Defense Counsel's Stipulation.

In its Striking Order, the Court suggested that Mr. Mumford violated Fed. R. Civ. P. 6(b) by "not seek[ing] to stipulate to an extension with opposing counsel" prior to making the first motion to enlarge time.[17] It is unclear that such a request is a requisite for moving to enlarge time under Rule 6(b). (The Court's local rules provide that "[n]o stipulation between the parties … affecting the course or conduct of any civil proceeding will be effective until approved by the court."[18]) It appears the Court adopted Defendants' argument that the Party's motion to enlarge should be denied because Mr. Mumford "failed to even ask for an extension before the deadline expired."[19]

---

[16] Doc. 228 at 2.
[17] Doc. 228 at 2 & n.5.
[18] DUCivR 83-6.
[19] Doc. 220 at 6.

The Party has two responses:  First, the Defendants do not contend that Mr. Mumford's request would have made a difference.  On December 8, prior to the second motion to enlarge, Mr. Mumford reached out to Defendants' counsel to explain the situation with co-counsel caring for his mother in Chicago, and to request additional time.  In that correspondence, Mr. Mumford made a reciprocal offer to extend time to Defendants' counsel.[20]  He wrote: "[W]hy don't you tell me how much additional time you need and see if that's a way to work these things out? Isn't that how lawyers usually work through these issues instead of writing long letters …?"[21] Defendants' counsel did not respond, and instead after the Party filed its motion for fees, on December 14, 2015, filed a motion to extend time to January 19, 2015, which is essentially what Mr. Mumford had offered in correspondence on December 8.[22]

Second, to the extent there is a rule governing courtesies such as requests for extensions of time, it flows in the Party's favor.  Rule 14-301 of the Rules Governing The Utah State Bar provides that "[l]awyers shall agree to reasonable requests for extension of time and waiver of procedural formalities when doing so will not adversely affect their clients' legitimate rights."[23] And as the district court observed in *Stark-Romero v. National R.R. Passenger Co. (AMTRAK)*, "showing good cause is not a particularly demanding requirement."[24]

---

[20] *See* Doc. 221 at 5. The motion explained that the email correspondence was not attached because it referred in part to the parties' mediation discussions. *Id*. at 5 n.3.

[21] Doc. 224 at 3.

[22] Doc. 227.

[23] Rule 14-301 at ¶ 14, available at http://www.utcourts.gov/resources/rules/ucja/view.html?rule=ch14/03%20Civility/USB14-301.html.

[24] *Stark-Romero v. National R.R. Passenger Co. (AMTRAK)*, 275 F.R.D. 544, 547 (D.N.M. 2011) (granting an extension of time to identify experts made by letter mailed to the court six days after missing a deadline, which detailed several family crises the attorney faced which had escalated over time).

### III.   The "History" Of The Case Cannot Justify The Sanction Of Striking The Motion.

The Court's reference to the "history" of the case raises two issues. First, the Court pointed out that Mr. Mumford had been ordered "to retain co-counsel specifically to remedy these types of situations."[25]  In so doing, the Court appears to blame Mr. Mumford for issues his co-counsel faced in caring for his ailing mother in Chicago who was being moved into a nursing home facility, which the Party did not anticipate, and which co-counsel did not raise when the attorneys conferred about the filing on Friday, December 4, 2015.[26]

Mr. Mumford was preparing his client's motion for his fees and his co-counsel's fees, which required information from his co-counsel. Mr. Mumford and his co-counsel had agreed to confer on the draft motion on Monday, December 7.  When Mr. Mumford had not heard from his co-counsel as planned, he filed the motion to enlarge time.  It was only the following day, December 8, that his co-counsel explained how he was detained in Chicago caring for his ailing mother, and anticipated that he would be back in the office Thursday, December 10, and could supply the information and materials the Party needed to make the motion at that time. Based on that, Mr. Mumford filed the second motion. And when Mr. Mumford did not receive the necessary information until just before close of business on December 10, when his paralegal was unavailable to incorporate the information into the motion for fees, and the court-mandated bill of costs, the Party made the third motion to enlarge time.  In total, the Party filed its motion for fees within four days of the initial deadline.

---

[25] Doc. 228 at 4.
[26] Doc. 224 at 1-2.

7

It bears mentioning here that the time limit for bringing a motion for fees is not jurisdictional.[27] And it is well-established that courts have the power to extend time to file motions for fees and costs under Rule 6(b), including by motion made after expiration of prescribed time limit.[28]

Second, the reference by the Court to the "history" of the case cannot justify a sanction as severe as the Striking Order, lest the Court punish Party and Mr. Mumford multiple times for the same conduct.[29] Here, the Court appears to be referring to the "history" of the case, which includes its prior orders striking the Party's motion for summary judgment and refusing to reconsider its denial of a motion to quash, where the magistrate judge had ordered a response on a day's notice after the parties resolved the urgency of a resolution on an expedited basis.[30] As Mr. Mumford explained in his response to the Court's Order to Show Cause, filed in October (time for which Mr. Mumford did not include in the Party's motion for attorney fees):

---

[27] *See Mints v. Educational Testing Service*, 99 F.3d 1253, 1260 (3d Cir. 1996) (rejecting timeliness argument asserted for the first time on appeal because "the time constraint provision in Rule 54(d)(2)(B) is not jurisdictional").

[28] DUCivR 54-2(f); Fed. R. Civ. P. 6(b); *Townsend Engineering Co. v. HiTec Co.*, 117 F.R.D. 612, 614 (N.D. Ill. 1987) (holding that time for filing motion for fees under local rule was subject to enlargement via Rule 6(b) as "the most reasonable standard for relieving parties and counsel from the strict operation of a timeliness requirement"); *Skyywalker Records, Inc. v. Navarro*, 742 F. Supp. 638, 639 (S.D. Fla. 1990) (granting motion to extend time to file motion for fees meritorious notwithstanding the court's "order explicitly caution[ing] the parties to adhere to the time limitations for requesting cost awards" and plaintiff's motion for fees "which should have given the defendant a second warning of the impending deadline")

[29] *See In re Magwood*, 785 F.2d 107, 1082-84 (D.C. Cir. 1986) (reversing sanctions that were not "compensatory or remedial in nature" but instead "designed to punish" an attorney for violating another order "and, perhaps, for other behavior that the Trustee and the bankruptcy court found irritating"); *see also Motown Record Corp. v. Superior Court*, 155 Cal. App. 3d 482, 491 (1985) (reversing sanctions based on a one-day delay in the production of a privilege log and holding that the imposition of such a severe penalty for a relatively minor infraction could not be justified by referring back to the offending party's prior failures for which sanctions were already imposed).

[30] Docs. 120 & 171.

>On the one hand, I remain willing to take ownership of my actions, as I have from the beginning of this case. For example, I recently filed my client's motion for summary judgment [167] at 12:02 a.m. on September 23, 2015, and the corrected motion [168] at 1:44 p.m. that same day, with exhibits and hyperlinks, after the Court granted my motion for a one-day extension to September 22, 2015. As stated in my motion to extend time [165], I had been under unanticipated exigencies at work and home as a result of my special needs son being in the pediatric ICU for almost two weeks, and the burdens of a small firm law practice. I should have asked for two extra days instead of one, and I must accept the consequences of my actions.
>
>On the other hand, as I started to share in the brief I filed last Friday, the Court should reject Defendants' increasingly frequent attempts to have the Court apply the rules unequally as between the parties. The Court's list of "deadlines" I purportedly missed [171] is exaggerated and lacking in a consistent criteria.[31]

The Party's response attempted to demonstrate in detail that many of the perceived "missed deadlines" were not, in fact, missed deadlines, and how the Court's tally thereof included, for example, instances where Defendants had admitted that they were the parties who had violated the Court's order.[32] The Court did not address these issues in its order, characterizing Mr. Mumford's arguments at the time as "irrelevant" because one party's violation of the Court's order will not justify the Party's violation of a deadline, and observing that "although Mr. Mumford would like to attempt to find fault with the court's list of missed deadlines, the fact remains that he has missed multiple deadlines."[33] The Party is not asking the Court to revisit that ruling, but respectfully submits that, to the extent that the Court's Striking Order is based upon previously sanctioned conduct, the order constitutes improper double punishment for the same conduct.

---

[31] Doc. 192 & 193-1.
[32] *See* Doc. 193-1.
[33] Doc. 196 at 12.

9

## IV. The Court Should Reconsider Its Striking Order In Light Of The Policy Reasons Behind § 1988.

There is a final reason why the Court should reconsider its ruling striking the Party's motion for fees, and that is related to the purpose that Congress enacted 42 U.S.C. § 1988, the Civil Rights Attorney's Fees Awards Act of 1976, authorizing the Party's motion. The Tenth Circuit has previously observed how § 1988 was passed "to ensure 'effective access to the judicial process' for persons with civil rights grievances."

An award of fees under Section 1988 gives citizens access to the courts, and enables them to enforce the substantive provisions of the civil rights laws enacted by the United States Congress. By enacting Section 1988, Congress clearly intended to encourage private enforcement of the civil rights laws:

> All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.
> In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it cost them to vindicate these rights in court.

Here, it appears from the Court's statements at the October 27 hearing that there was a misunderstanding expressed by the Court and Defendants' counsel concerning whether the Party qualified as a "prevailing party" under § 1988. The Defendants based their oppositions to the Party's motion to enlarge time in arguments regarding the "futility" of the Party's motion, arguing essentially that because the Court struck the Party's motion it could not qualify as a "prevailing party" to obtain an award of attorneys fees.

But in fact, the Party's motion set forth extensive authority demonstrating how it met the

appropriate standard, justifying an award of fees as one of the "prevailing parties" in the case. As the Tenth Circuit has reiterated repeatedly, "[c]ourts should therefore award fees to the prevailing party under § 1988 'unless special circumstances would render such an award unjust.'" By opposing reasonable requests for an enlargement of time, and suffering no real prejudice, Defendants perpetuated their erroneous arguments against the motion for fees through the mechanism of a sanction justified by the Party's "disrespect" for the Court. The Party's motion further demonstrated how supporters of SB54 had "engaged in a public campaign to discourage donors from contributing funds that the Party can use to pay its attorneys," such that, of the total $ 285,318.23 in legal services provided to the Party by Mr. Mumford and his firm over the life of this time-intensive litigation, to date Mr. Mumford has only received $35,000 for all of the time and resources his firm devoted to obtain relief on behalf of the Party. For these reasons, and the important public purpose served by the result obtained in this matter, the Party respectfully requests reconsideration so that the Court can consider and weigh its motion on the merits.

## CONCLUSION

For the reasons stated above, the Party requests that the Court reconsider its ruling striking the Party's motion for fees, and consider that motion on the merits.

DATED this 11th day of January, 2016.

                                         CHRISTENSEN & JENSEN, P.C.

                                         /s/  Karra J. Porter
                                         Karra J. Porter
                                         *Attorney for Plaintiff Utah Republican Party*